UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NOLAN ANDERSON, on behalf of himself individually, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>INTERPATH LABORATORY, INC., an Oregon corporation; and PRAXIS HEALTH, P.C., an Oregon Professional Corporation,<br><br>          Defendants. | Case No. 2:24-cv-00341-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Defendants Interpath Laboratory, Inc. and Praxis Health, P.C.'s Motion to Dismiss (Dkt. 14). Having reviewed the record and the parties' submissions, the Court finds that the facts and legal arguments are adequately presented and that oral argument would not significantly aid its decision-making process. The Court therefore decides the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion is denied.

## BACKGROUND

Plaintiff alleges that on August 15, 2023, he received routine medical care at Prairie Family Medicine, a clinic operated by Praxis Health, P.C. (Praxis) (Dkt. 1 ¶¶ 21, 45). Praxis is owned by Defendant Interpath Laboratory, Inc. (Interpath) (*id.* at ¶ 3; Dkt. 14-1 at 4 n.2). During that visit, Prairie staff drew Plaintiff's blood and sent the sample to Interpath for testing (Dkt. 1 ¶ 21). Plaintiff alleges that after the visit, Prairie contacted him and informed him that, due to the

technician's error, the blood sample was insufficient and that a second blood draw was required (*id.* at ¶ 21). Plaintiff alleges that Prairie expressly assured him that "he would not be charged for the cost associated with the second blood draw" necessitated by the technician's error (*id.*).

Plaintiff returned to Prairie the following day on August 16, 2023, for the second blood draw, which was again submitted to Interpath for laboratory testing (*id.*). Plaintiff alleges that, notwithstanding Prairie's assurance made on August 15, Interpath later billed him for "both the first and second blood draw" (*id.* at ¶ 22). On October 16, Plaintiff received an invoice from Interpath reflecting charges on both August 15 and August 16 with the line item "draw fee" appearing only once on August 16 (*id.* at Ex. A-1).

Plaintiff alleges he promptly disputed the invoice. On October 22 and October 26, 2023, Plaintiff emailed Interpath explaining that he was assured that he "would not be charged for services arising out of coming back in" and that he "would not be charged for the tech's mistake of not drawing enough blood" and requesting the bill be corrected (*id.* at ¶ 23; *id.* at Ex. B-1). Interpath responded that it would not adjust the charges without confirmation from Prairie, stating that "if we need to write off the charges, we need a confirmation first from the provider" (*id.* at ¶ 24; *id.* at Ex. B-1).

Plaintiff alleges he contacted Prairie, and on November 1, 2023, a Prairie representative agreed that Plaintiff should not have been charged and stated that Prairie would contact Interpath to correct the bill (*id.* at ¶ 25). Plaintiff relayed this information to Interpath and again requested a revised invoice (*id.* at ¶ 26; *id.* at Ex. B-2). Interpath responded that it had not yet received confirmation from Prairie and declined to issue a corrected bill (*id.*).

On or about November 9, 2023, Interpath issued another invoice that again included charges Plaintiff contends were erroneous (*id.* at ¶ 27; *id.* at Ex. C-1). That invoice was marked

"FINAL NOTICE" and stated: "To prevent further action being taken on your account, REMIT PAYMENT IN FULL within 15 days of the statement date" (*id.*). Plaintiff alleges that he continued to dispute the charges throughout November and early December 2023 (*id.* at ¶¶ 28-29). Further, he alleges that on December 5, 2023, he spoke with "the same Prairie representative," who agreed he should not have been billed and assured him Interpath would be contacted (*id.* at ¶ 28).

Despite the ongoing dispute, Plaintiff alleges that Interpath referred the debt to a third-party collection agency. On December 10, 2023, Interpath sent Plaintiff a bill stating: "*COLLECTIONS* YOUR ACCOUNT MAY HAVE BEEN TURNED OVER TO COLLECTIONS" (*id.* at ¶ 29; *id.* at Ex. D). On December 19, Plaintiff received correspondence from Bonneville Collections notifying him that it had been assigned the debt and was attempting to collect (*id.* at ¶ 30; *id.* at Ex. E). Interpath explained that its system "automatically forwards any balance on the account that remains unresolved or outstanding to a collection agency after 90 days from the received date from the insurance" (*id.* at ¶ 32; *id.* at Ex. B-3).

Plaintiff further alleges that months later, after the account had already been referred to collections, Interpath issued revised billing statements reflecting a reduction to the amount previously billed. Specifically, on February 7, 2024, Interpath sent Plaintiff a bill showing a blood draw fee of $17.00, an adjustment of "($33.99)" for a balance of "($16.99)" (*id.* at ¶ 33; *id.* at Ex. F-1). It followed up with another invoice which made no reference to the blood draw but reported that his account had been turned over to collections (*id.* at ¶ 34; *id.* at Ex. G).

Plaintiff brings claims under the Idaho Patient Act (IPACT), Idaho Code §§ 48-301–48-315, alleging that Defendants engaged in an "extraordinary collection action," as defined by IPACT, without first providing a statutorily sufficient final notice or complying with IPACT's procedural requirements (*id.* at ¶¶ 48-55). Plaintiff also asserts a claim under the Idaho Consumer

Protection Act (ICPA), Idaho Code §§ 48-601–48-619, alleging that Defendants engaged in unfair and deceptive billing and collection practices, including billing for disputed charges and referring those charges to collections (*id.* at ¶¶ 56-65).

Defendants move to dismiss both claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure (Dkt. 14).

## LEGAL STANDARD

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing dismissal of claims under Rule 12(b)(6), the Court must accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact or legal conclusions couched as facts. *Id.* at 678-79; *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). Generally, a district court may not consider any materials beyond the complaint when ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). If the court considers evidence outside the pleadings, it must convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. A court may, however, consider certain materials—documents

attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ANALYSIS

### A.    Idaho Patient Act (IPACT)

Plaintiff alleges that Defendants violated IPACT[1] by referring his medical debt to a third-party collection agency without first providing a statutorily sufficient "final notice before extraordinary collection action" and without complying with IPACT's procedural prerequisites. Defendants argue that no "extraordinary collection action" occurred at all because the referral to collections took place more than sixty days after Plaintiff received an invoice that Defendants characterize as a valid final notice.

IPACT defines an "extraordinary collection action" to include "selling, transferring, or assigning any amount of a patient's debt to any third party" prior to sixty days from the patient's receipt of a "final notice before extraordinary collection action." Idaho Code § 48-303(3)(a)(i). Selling a debt to a third-party collection agency less than sixty days after the patient receives a final notice, then, is an extraordinary collection action.

A "final notice before extraordinary collection action" is a written notice that must contain specific enumerated information, including a detailed description of all reductions, adjustments, offsets, and third-party payor payments, as well as the final amount the patient is liable to pay after

---

[1]    IPACT was passed by the Idaho Legislature in 2020. Its legislative purpose indicates the "Idaho legislature finds that medical billing practices have little visibility to Idaho citizens. As a result, consumers often find themselves in collection actions for debts they were unaware of, from health care providers whom they do not recognize." Idaho Code § 48-302.  "Once in collections, current Idaho law enables excessive attorney's fees and fails to provide judges with clear guidance to combat abuses of the collections process. This chapter shall govern the fair collection of debts owed to health care providers." *Id.*

all applicable reductions. Idaho Code § 48-303(4)(a)(vi)–(vii). For purposes of calculating statutory timelines in the event of multiple notices, the operative "final notice" is "the notice that first supplied the information required by paragraph (a) of this subsection *if such information did not change in any subsequent notices*." Idaho Code § 48-303(4)(b) (emphasis added).

Defendants argue that Interpath satisfied IPACT's Final Notice requirement because the October 8, 2023, invoice (attached to the Complaint as Exhibit A) qualifies under Idaho Code § 48-303(4). They contend that this invoice was the first written statement supplying all required information and therefore triggered the statutory waiting periods. More specifically, Defendants assert that the October 8 invoice contained the core elements required by § 48-303(4): Plaintiff's identifying information; Interpath's name, address, and phone number; a list of the laboratory services performed with dates and charges; the name of the insurer to whom the charges were submitted; an explanation of insurance reductions; and the final amount due.

The billing exhibits appended to the Complaint reflect the information required by § 48-303(4)(a) changed in later notices. After Plaintiff's  account had already been referred to collections, Defendants issued a revised billing statement reflecting a reduction to (and then elimination of) the draw fee and a corresponding change to the final amount allegedly owed. Those changes altered core elements of a statutory "final notice," including "a list of the goods and services . . . provided," "all reductions, adjustments, [and] offsets," and "the final amount that the patient is liable to pay." Idaho Code § 48-303(4)(a)(vi)–(vii).

Because the required information changed in subsequent notices concerning care Plaintiff received on August 15 and 16, 2023, §  48-303(4)(b) precludes treating any earlier invoice as the operative "final notice before extraordinary collection action" for purposes of IPACT's timing provisions. Accepting Plaintiff's allegations as true, then, and even assuming (without deciding)

that Defendants' interpretation of the law is correct, Plaintiff plausibly alleges that no statutorily valid and operative final notice was provided before Defendants referred his account to a third-party collection agency. This allegation is sufficient to state a claim for relief under IPACT. Accordingly, Defendants' motion to dismiss the IPACT claim is denied.

The Court notes briefly that Defendants also argue that even if their supposed "final notice" lacked certain statutorily required pieces of information, it "substantially complied" with IPACT's statutory requirements. But the earlier notices fail to be "final notices" because the information they contain changed, not because they were missing information (an issue the Court does not decide). Moreover, even if that were not the case, taking Plaintiff's allegations as true the Court would be constrained to give effect to the "final notice" warning in the November 9, 2023, invoice. By December 19, his debt had been transferred to collections, which is less than sixty days even from November 9.

## B.    Idaho Consumer Protection Act (ICPA)

Defendants also move to dismiss Plaintiff's ICPA claim, arguing that Plaintiff has failed to plausibly allege deceptive or unfair conduct or an ascertainable loss. The Court disagrees.

The ICPA prohibits unfair or deceptive acts or practices in trade or commerce. Idaho Code § 48-603. To state a claim, a plaintiff must plausibly allege that: (1) he purchased goods or services; (2) the defendant engaged in unfair or deceptive conduct; and (3) the conduct caused an ascertainable loss of money or property. Idaho Code § 48-608(1).

Plaintiff alleges that he was expressly promised he would not be charged for a second blood draw necessitated by technician error; Defendants nevertheless billed him for that blood draw; he promptly and repeatedly disputed the charge; and Defendants referred the disputed debt to collections despite being aware of the dispute. Plaintiff further alleges that Defendants engaged in

this practice on a widespread and systematic basis, relying on the fact that consumers will often pay small, disputed amounts rather than contest them.

Taking these allegations as true, Plaintiff has plausibly alleged conduct that could be found deceptive or unfair under the ICPA. Billing for services allegedly promised to be free, representing that payment is owed despite a known dispute, and invoking the collections process to pressure payment of a disputed charge may constitute misleading or unfair practices within the meaning of the ICPA. *See Ridgeline Medical, LLC v. Lyon*, No. 52069-2024, 2026 WL 71109, at *9 (Idaho Jan. 9, 2026) ("Reporting inaccurate information about a debt, seeking to collect an invalid debt, or failing to permit patients an opportunity to pay a debt in advance of commencing extraordinary collection activities can have negative and adverse effects on a patient."). As the Idaho Supreme Court in *Ridgeline* explains, the "IPA's requirements to provide patients with certain notices and wait a specified timeframe before commencing extraordinary collection activities to give the patient time to pay the debt or make payment arrangements are reasonable efforts to serve the State's purpose to protect patients from abuses of the medical debt collection process." This Court is not persuaded that conduct plausibly alleged to violate a statute enacted to protect patients from abusive medical debt collection practices would not also constitute unfair or deceptive conduct within the meaning of the ICPA, particularly where debt collection activity is expressly included within the ICPA's scope.

Plaintiff has also plausibly alleged an ascertainable loss. Although the amount at issue is small, Plaintiff alleges that he (as part of a class) was subjected to collection activity and economic pressure to pay a charge he contends was not owed. At the pleading stage, exposure to collection efforts and pressure to pay a disputed charge are sufficient to plausibly allege an ascertainable loss under Idaho Code § 48-608(1). *See* Idaho Code § 48-602 ("Trade and commerce mean the

advertising, offering for sale, selling, leasing, renting, collecting debts arising out of the sale or lease of goods or services . . . . ").

Defendants rely heavily on *Litster Frost Injury Laws., PLLC v. Idaho Injury Law Group, PLLC*, 518 P.3d 1, 12-13 (Idaho 2022). *Litster Frost*, however, confirms—not undermines—that the ICPA's "ascertainable loss" requirement is broader than completed payment. In that case, the Idaho Supreme Court expressly reasoned that "claims against the settlement fund" constituted an "ascertainable loss of money or property" because "[a]ny deprivation" of money that "is capable of being discovered, observed, or established" suffices, even before funds are finally disbursed. *Id.* ("Gryder's ascertainable loss of money is in the costs claimed by Litster against the settlement fund."). Also, the Court's decision in *Pickering v. Sanchez* is consistent with that reasoning, reiterating that the touchstone is whether the challenged conduct "caused the consumer to suffer an 'ascertainable loss of money or property,'" not whether the loss has already been irreversibly paid. 544 P.3d 135, 142 (Idaho 2024) (quoting Idaho Code § 48-608(1)).

Together, these cases foreclose claims based on abstract dissatisfaction, but they also reject the notion that a defendant may evade ICPA liability merely because the financial deprivation takes the form of disputed charges, liens, or collection claims rather than a consummated payment. Plaintiff has adequately stated a claim for relief under the ICPA. Accordingly, Defendants' motion to dismiss the ICPA claim is denied.

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. 14) is **DENIED**.

DATED: January 22, 2026

Amanda K. Brailsford
U.S. District Court Judge