Jaren Wieland, ISB No. 8265
MOONEY WIELAND WARREN
512 W. Idaho St., Ste 103
Boise, ID 83702
t: 208.401.9219
f: 888.234.8543
jaren.wieland.service@mooneywieland.com

Aaron M. Zigler (Pro Hac Vice)
Nidya S. Gutierrez (Pro Hac Vice)
Lawrence V. Ashe (Pro Hac Vice)
ZIGLER LAW GROUP, LLC
308 South Jefferson Street, Suite 333
Chicago, Illinois 60661
t: 312.535.5995
aaron@ziglerlawgroup.com
nidya@ziglerlawgroup.com
larry@ziglerlawgroup.com

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **Nolan Anderson**, on behalf of himself individually, and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>vs.<br><br>**Interpath Laboratory, Inc.**, an Oregon corporation and **Praxis Health, P.C.** an Oregon Professional Corporation,<br><br>     Defendants. | Case No. 2:24-cv-00341<br><br>**First Amended Class Action Complaint**<br><br>**Demand for Jury Trial** |

Plaintiff Nolan Anderson ("**Plaintiff**"), on behalf of himself and all other similarly situated individuals, alleges the following against Interpath Laboratory, Inc. ("**Interpath**") and Praxis Health, P.C. ("**Praxis**") (collectively "**Defendants**") as follows:

**NATURE OF THE ACTION**

1.    Often, obtaining medical services, whether emergency or routine, is a stressful and confusing experience. Unfortunately, for many that experience is followed by an equally stressful and confusing medical-billing processes during which medical debt collectors ignore legitimate billing concerns and pressure consumers to pay cryptic and/or disputed invoices or face unknown collection costs and penalties.

2.    Idaho's legislature and courts have recognized the need to protect Idaho consumers from such exploitive and unfair billing practices through laws such as the Idaho Consumer Protection Act (ICPA) and Idaho Patient Act (IPACT) which prohibit unfair and misleading billing procedures and set forth specific statutory requirements medical providers must follow when billing patients.

3.    Praxis, a multisite healthcare provider, and Interpath, a clinical laboratory, are both subject to ICPA and IPACT. Interpath and Praxis both provide medical services throughout Oregon, Washington, and Idaho. Interpath owns Praxis through its interest in Adaugeo Healthcare Solutions, LLC. Interpath and Praxis share common managers, directors, administrative systems and the same headquarters address. Interpath regularly works with and provides laboratory testing for Praxis clinics and care facilities.

4.    In August 2023, Plaintiff received routine medical treatment at Praxis's Coeur d'Alene, Idaho, clinic which does business as Prairie Family Medicine ("**Prairie**"). At the conclusion of the appointment, Plaintiff's provider did a blood draw and sent the samples to Interpath to be tested.

5.      Plaintiff reasonably and in good faith disputed the amount Defendants charged for those services. While Plaintiff made several attempts to resolve the issue, Defendants refused to reasonably assist in addressing his claims or take any steps to ensure they were accurately charging him for the services he received. Then, despite knowing that Plaintiff disputed the debt owed, and without providing sufficient notification, Defendant Interpath sent his account to a third-party collection agency.

6.      Defendants commonly engage in convoluted, unbending, and automated debt-collection practices such as those faced by Plaintiff. As detailed herein, Defendants' practices have resulted in Class Members being subjected to harsh and unfair penalties, such as collections harassment, interest, additional fees and credit hits. Through this Complaint, Plaintiff seeks to remedy such harms on behalf of himself and all similarly situated individuals who have been subjected to Defendants' illegal debt-collection practices.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d). Plaintiff brings this civil action seeking to represent a class of more than 100 plaintiffs pursuant to Fed. R. Civ. P. 23. Plaintiff is a citizen of the State of Washington. Defendants are both citizens of Oregon. Plaintiff seeks an award exceeding $5,000,000, exclusive of interest and costs, on behalf of himself and the putative class.

8.      This Court has personal jurisdiction over Defendants because Plaintiff was foreseeably harmed by Defendants in this district, and because Defendants conduct substantial business in this district.

9.      Venue is proper in this district under 28 U.S.C. § 1391(b). A substantial part of the events giving rise to Plaintiff's claims, namely Plaintiff's receipt of medical care at Prairie and receipt of medical lab services through Interpath, occurred in this district. Plaintiff's claims arise out of Defendants' contacts with Idaho.

## PARTIES

10.      Plaintiff is a citizen of the state of Washington.

11.      Praxis is an Oregon Professional Corporation headquartered in Pendleton, Oregon.

12.      Interpath is an Oregon corporation also headquartered in Pendleton, Oregon.

## I.      MEDICAL BILLING AND PATIENT RIGHTS REGULATION

### *Idaho Patient Act (IPACT) Idaho Code § 48-301, et seq.*

13.      Recognizing the significant harm that abusive and aggressive patient-billing practices imposes on Idahoans, the Idaho legislature passed IPACT in 2020.

14.      IPACT prohibits medical providers, including health care providers and health care facilities, from engaging in "extraordinary collection action" to recover debt allegedly owed by patients without first complying with specific statutory requirements.

15.      Under IPACT, providers have the burden of establishing compliance with those statutory requirements. Their failure to do so subjects them to statutory damages.

16.      In relevant part, IPACT defines extraordinary collection actions as "selling, transferring, or assigning any amount of a patient's debt to a third party, or otherwise authorizing any third party to collect the debt in a name other than the name of the health

care provider" less than 60 days after sending the patient a Final Notice Before Extraordinary Collection Action (a "**Final Notice**"). I.C. § 48-303(3)(a)(i).

17. A Final Notice is a written notice that contains, at a minimum:

(i) the patient's name and contact information, including telephone number;

(ii) the name and contact information, including telephone number, of the health care facility where the health care provider provided goods and services to the patient;

(iii) a list of the goods and services that the health care provider provided to the patient during the patient's visit to the health care facility, including the initial charges for the goods and services and the date the goods and services were provided, in reasonable detail;

(iv) a statement that a full itemized list of goods and services provided to the patient is available upon the patient's request;

(v) the name of the third-party payors to which the charges for health care services were submitted by the health care provider;

(vi) a detailed description of all reductions, adjustments, offsets, and third-party payor payments, including payments already received from the patient, that adjust the initial charges for the goods and services provided to the patient during the visit; and

(vii) the final amount that the patient is liable to pay after taking into account all applicable reductions.

I.C. § 48-303(4)(a).

18.    In addition to sending Final Notice, before taking extraordinary collection action, a provider must provide the patient with a Consolidated Summary of Services ("**CSS**") within 60 days of the latest of: (i) the date the patient received services, (ii) the date of discharge, or (iii) the date first permitted by applicable billings code(s) published by the relevant national association. I.C. § 48-304(1)(b).

19.    A CSS is written notice that contains, at a minimum:

(i) the patient's name and contact information, including telephone number;

(ii) the name and contact information, including telephone number, of the health care facility that the patient visited;

(iii) the date and duration of patient's visit to the health care facility;

(iv) a general description of goods and services provided to the patient during the visit to the health care facility, including the name, address, and telephone number of each billing entity whose health care providers provided the services and goods to the patient; and

(v) a clear and conspicuous notification at the top of the notice that states:

This is Not a Bill. This is a Summary of Medical Services You Received. Retain This Summary for Your Records. Please Contact Your Insurance Company and the Health Care Providers Listed on this Summary to Determine the Final Amount You May Be Obligated to Pay.

I.C. § 48-303(1)(a).

20.    IPACT further prohibits providers from charging or causing interest, fees, or other ancillary charges to accrue on a patient's account until 60 days after the patient receives the later of the CSS or Final Notice. I.C. § 48-304(1)(d).

21.     Finally, under IPACT, providers may not engage in extraordinary collection actions until 90 days after: (i) the patient received the later of the CSS and Final Notice, and (ii) final resolution of all internal reviews, good faith disputes, and appeals of any chargers or third-party payor obligations or payments. I.C. § 48-304(1)(e).

### *Idaho Consumer Protection Act (ICPA)*

22.     The ICPA is to be construed liberally and prohibits unfair or deceptive business practices. This includes, but is not limited to, "any act or practice that is otherwise misleading, false, or deceptive to the consumer." I.C. § 48-603(17). Without limitation, such practices include false and misleading billing and debt collection practices.

### **FACTUAL ALLEGATIONS**

23.     On August 15, 2023, Plaintiff's provider at Prairie drew his blood during a routine medical appointment and submitted the sample to Interpath to be tested. Following the appointment, Prairie called Plaintiff and advised that, due to technician error, another blood draw would be necessary. Prairie assured Plaintiff that he would not be charged for the cost associated with the second blood draw then scheduled for the next day, August 16, 2023. Plaintiff returned to Prairie the following morning, August 16th, for the second blood draw, which was also sent to Interpath.

24.     On October 16, 2023, Plaintiff received an invoice from Interpath, which included charges for both the first and second blood draw. A true and correct copy of the October Interpath invoice is attached hereto as **Exhibit A** and incorporated herein by this reference. Notably, the column "INS. PAID/ADJUST" shows -$16.99, but it does not indicate which of those occurred, i.e., Plaintiff's insurance paid $16.99 for what Plaintiff

then understood to be an erroneous $17.00 charge or InterPath adjusted off $16.99 of the erroneous $17.00 charge.

25.     On October 22, 2023, and October 26, 2023, Plaintiff sent Interpath emails disputing the invoice and requesting a correction. He explained that Interpath was erroneously charging him for services related to the technician's error for which Prairie promised he would not be charged. A true and correct copy of Plaintiff's exchanges with Interpath, including the emails he sent on October 22 and October 26, is attached hereto as **Exhibit B** and incorporated herein by this reference.

26.     On October 26, 2023, Interpath responded:

> If we need to write off the charges, we need a confirmation first from the provider or from Prairie Family Medicine on which charges to adjust. Please coordinate with your doctor's office first about the matter, and if they need to submit it in error in case it was a duplicate, then we would need a call from them directly.

*Id.* at B-1.

27.     On November 1, 2023, Plaintiff spoke with a representative at Prairie who agreed that Plaintiff should not have been charged for the technician's error and assured Plaintiff that Prairie would contact Interpath to correct the bill.

28.     On November 7, 2023, Plaintiff emailed Interpath regarding his communications with Prairie and, again, requested that Interpath issue a new bill. Interpath responded that it would not issue a revised bill until it received a response from Prairie. *Id.* at B-2.

29.     On or around November 9, 2023, Interpath sent Plaintiff another invoice including charges for both the first and second blood draws. This bill included language

stating: "*FINAL NOTICE* To prevent further action being taken on your account, REMIT PAYMENT IN FULL within 15 days of the statement date." A true and correct copy of the November 9, 2023, invoice from Interpath is attached hereto as **Exhibit C** and incorporated herein by this reference.

30.     Throughout November, Plaintiff contacted Prairie and Interpath to dispute the amount he had been charged and requested a revised invoice on multiple occasions. On December 5, 2023, Plaintiff talked to the same Prairie representative with whom he first spoke on November 1. The representative again agreed that Plaintiff should not be billed charges relative to the technician error and again assured Plaintiff that she would contact Interpath regarding the issue.

31.     On or about December 10, 2023, Interpath sent Plaintiff another bill. This bill included language stating: "*COLLECTIONS* YOUR ACCOUNT MAY HAVE BEEN TURNED [*sic*] TO COLLECTIONS." A true and correct copy of the December 10, 2023, bill is attached hereto as **Exhibit D** and incorporated herein by this reference.

32.     On December 19, 2023, Plaintiff received correspondence from Bonneville Collections notifying him as follows: "Bonneville Collections is a debt collector. We are trying to collect a debt that you owe to Interpath Laboratory. We will use any information you give us to help collect the debt." A true and correct copy of the Bonneville Collection notice is attached hereto as **Exhibit E** and incorporated herein by this reference.

33.     On January 1, 2024, Plaintiff emailed Interpath. He again requested that they fix the invoice and expressed frustration that Interpath sent the bill to collections despite knowing of the dispute as to the amount owed. Ex. B at B-3 .

34.    On January 4, 2024, Interpath responded by again noting that they had not received any communication from Prairie relative to Plaintiff's request and advised that "[Interpath's] system automatically forwards any balance on the account that remains unresolved or outstanding to a collection agency after 90 days from the received date from the insurance." *Id.* at B-3.

35.    On February 7, 2024, Interpath sent Plaintiff another bill showing a $16.99 reduction from the amount originally billed. The deduction was applied to the draw fee for the second draw, but there is no description of the basis for the reduction, yet another violation of IPACT.  Although the correction was consistent with Plaintiff's position that previous invoices were erroneous, it still included language advising Plaintiff that his account may have been turned over to collections and that he must immediately remit payment in full to prevent "interest, fees, or credit reporting." A true and correct copy of the February 7, 2024, invoice is attached hereto as **Exhibit F** and incorporated herein by this reference.

36.    On February 25, 2024, Interpath sent Plaintiff another bill. This bill did not include the $16.99 correction. However, it again stated that Plaintiff's account may have been turned over to collections and demanded immediate payment of the full balance owed. A true and correct copy of the February 25, 2024, invoice is attached hereto as **Exhibit G** and incorporated herein by this reference.

37.    Despite their connection and regular work together, and despite Prairie's numerous representations that Plaintiff would not be charged for the error, neither Defendant took reasonable action to address the good-faith dispute or resolve Plaintiff's

legitimate billing concerns.

38.    In fact, both Defendants appear to have wholly ignored Plaintiff's requests for assistance and simply pushed the invoice through an automated system without any concern for his rights as a patient or consumer.

39.    Furthermore, Interpath's practice of *automatically forwarding unresolved accounts to collection agencies* after 90 days despite the circumstances evidences that Plaintiff's experience was not unique but consistent with Interpath's regularly conducted business activity. The following reviews are a sample of complaints relative to Interpath's billing practices that can be found on company-review websites such as the Better Business Bureau website.



**Initial Complaint**
01/10/2024

**Complaint Type:** Billing Issues
**Status:** Unanswered ❓

Interpath labs **** labs/samples July 2023. They billed my insurance 12/20/23. My insurance PacificSouce paid 12/24/23. I received a bill from a collection agency 12/28/23. I have been on hold with them 3 hours today and they are claiming they have not been paid



**Initial Complaint**
01/29/2022

**Complaint Type:** Service or Repair Issues
**Status:** Unanswered ❓

This company has sent me to collections twice now even though my amount has been paid in full. I have received no communications from them about any outstanding balance even though they have my updated contact information. I also contacted the healthcare provider that this service was ran through (Providence Health) and they told me I was all settled on my end. Again, I made the effort to make sure this **** was paid and was never contacted further from this company. I called in December of 2021 to ensure this was settled. They have now put this on my credit report. This was the second instance of this company doing this. In 2020 I had another **** through them that I was told was settled by one of their direct employees. Later in 2020 I was sent to collections by them the first time and called and got it resolved. This company is not taking the proper credit reporting steps and running proper communications. I fully intend and confirm my bills are paid.

**Initial Complaint**
01/22/2024

**Complaint Type:** Billing Issues
**Status:** Unanswered ❓

I had the test on 3/9/2023.the lab staff made mistakes by file the claim to insurance with wrong patient's information. After all the correction and refill the claim. Insurance denied the claim. With the reason is the time limit to file is expired. So the lab sending the bill with amount:$274.93.(big difference amount it have in contract with insurance.That is totally not my fault. I feel innocent if it make me pay the charges just because someone else's made mistakes. So please help me to solve the problems. Your sincerest.

40.    Discovery has confirmed that Plaintiff's experience reflects Interpath's uniform, software-driven practices. Interpath has admitted that it does not send its patients a consolidated summary of services, as that term is defined in Idaho Code § 48-303(1)(a), and that it has not sent a consolidated summary of services to any patient during the relevant period.

41.    Interpath has admitted that its final notice before extraordinary collection action does not include the patient's telephone number, because Interpath's third-party billing software does not have that capability, and does not include a statement that a full itemized list of goods and services is available upon the patient's request—both of which Idaho Code § 48-303(4)(a)(i) and (iv) require.

42.    Interpath has admitted that it referred 363,495 patient accounts to a third-party collector from January 1, 2020 through March 9, 2026. Interpath has admitted that accounts are automatically sent to collections unless a flag is placed on the account, and that a flag prevents referral for only 60 days, after which the account is sent to collections even if the patient's dispute remains unresolved.

43.    Interpath has admitted that it became aware of IPACT in 2020 but has been unable to determine all changes it made to its billing and referral policies during the

relevant period, and that the only change it could identify was a November 2024 shift from 30-day to 60-day invoicing that was made to reduce mailing costs and was not related to IPACT.

## CLASS ALLEGATIONS

44.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff seeks to represent all consumers in the State of Idaho who were subject to Interpath's illegal billing and collection practices during the relevant statutory period defined as follows:

> Those who, on or after January 1, 2021 through the date the Court certifies the Class, (a) received laboratory or other health care goods or services associated with a visit to a health care facility located in Idaho for which Interpath issued one or more billing statements, and (b) whose patient account Interpath, or any agent acting on its behalf, sold, transferred, assigned, or referred to a third-party collection agency.

45.    Excluded from the Class are Defendants' employees and agents; any Judge conducting proceedings in this action and their parents, spouses and children as well as any other member of their family residing in their household; counsel of record in this action and their parents, spouses and children as well as any other member of their family residing in their household; and the legal representatives, heirs, successors and assigns of any excluded person.

46.    Plaintiff reserves the right to amend the Class definitions if discovery and further investigation reveal that the Class should be expanded or narrowed, divided into subclasses pursuant to Rule 23(c)(5), or modified in any other way.

47.    **Numerosity:** The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is currently unknown

to Plaintiff, based on the fact that Defendants operate in multiple locations within Idaho, admittedly engage in illegal automated debt-collection practices, and seemingly blanket refusal to assess or take any action to correct potentially erroneous bills and good-faith invoice disputes, Plaintiff estimates that the Class number is in the hundreds of thousands.

48.      Each Class member was injured when Interpath transmitted the member's account to an independent third-party collection agency authorized to collect the debt in a name other than Interpath's, exposing the member to third-party collection activity and depriving the member of money or property and of the statutory protections IPACT affords.

49.      Class members are readily identifiable from information and records in Defendants' possession, custody, or control.

50.      **Commonality:** There are questions of law and fact that are common to the Class and these questions of law and fact predominate over any questions affecting only individual Class members. These questions include:

   a. Whether Defendant Interpath's billing and debt-collection practices violate IPACT;

   b. Whether Interpath's invoices satisfy the requirements of I.C. § 48-303(4).

   c. Whether Interpath's invoices that do not claim to be a Final Notice satisfy the requirements of I.C. § 48-303(4).

   d. Whether Interpath's purported substantial compliance with IPACT precludes recovery by plaintiff and the class.

   e. Whether Defendants referred accounts to collections in the absence of a statutorily compliant "final notice before extraordinary collection action";

f.   Whether Defendants referred accounts to collections while billing information, including the amount allegedly owed, remained subject to change;

g.   Whether Defendants referred accounts to collections while patient disputes remained pending;

h.   Whether Defendants' billing and collection practices had the capacity, tendency, or likelihood to mislead consumers;

i.   Whether Defendants' conduct constitutes unfair or deceptive acts or practices under the Idaho Consumer Protection Act;

j.   The extent of the damages caused by Defendants;

k.   The relief to which Plaintiff and the Class are entitled; and

l.   The other remedies that might be appropriate to remedy Defendants' conduct.

51.   **Typicality:** Plaintiff's claims are typical of the whole Class because, like all other Class members, Plaintiff was subject to and damaged as result of Defendants' illegal billing and debt-collection practices, which, at least in Interpath's case, were automated. Plaintiff is advancing the same claims and legal theories individually and on behalf of all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same overarching and operative facts and are based on the same legal theories.

52.   **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Plaintiff does not have any interests that are adverse

to those of the Class members. Plaintiff has retained competent counsel highly experienced in class action litigation and intends to prosecute this action vigorously.

53.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Since the damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to seek redress for the wrongful conduct alleged on an individual basis.

## COUNT I
## <u>VIOLATIONS OF IDAHO PATIENT ACT (IPACT) - DEFECTIVE FINAL NOTICE BEFORE EXTRAORDINARY COLLECTION ACTION</u>
### (Against Interpath)

54.    Plaintiff repeats the allegations in all the foregoing paragraphs as if fully set forth herein.

55.    Plaintiff brings this count on behalf of himself and all members of the Class.

56.    Interpath is a health care facility or its agent as it is an entity operating a location that holds itself out to the public as providing health care services.

57.    Before taking any extraordinary collection action, IPACT required that Plaintiff and each Class member receive a final notice before extraordinary collection action containing all of the information specified in Idaho Code § 48-303(4)(a). Idaho Code § 48-304(1)(c).

58.    Interpath did not attempt to send Plaintiff a purported final notice before extraordinary collection action (as defined by § 48-303(4)(a)) until November 9, 2023. *See* Exhibit C ("*FINAL NOTICE*To prevent further action …"). However, this Final Notice was not Final in that Interpath sent another notice on February 7, 2024 that reduced the amount due to $36.40. *See* Exhibit F. Interpath sent another notice on February 25, 2024 that reflected an amount due of $53.39.  *See* Exhibit G.

59.    Each of these notices were also not effective as they failed to meet all the requirements of I.C. § 48-303(3)(a)(i) -(viii).

60.    Interpath's final notice omits the patient's telephone number, Idaho Code § 48-303(4)(a)(i), and the statement that a full itemized list of goods and services is available upon request, Idaho Code § 48-303(4)(a)(iv). Interpath admits both omissions, which are built into its billing software and appear in every final notice it sends. In addition, because the information IPACT requires—including the reductions and the final amount owed—changed in Interpath's subsequent statements, no earlier invoice qualifies as the operative final notice. Idaho Code § 48-303(4)(b).

61.    Yet Interpath sold, transferred, assigned to Bonneville Collections or otherwise authorized Bonneville Collections to pursue the collection of Plaintiff's debt in its name on or before December 19, 2023.

62.    In doing so, Interpath engaged in an extraordinary collection action by selling, transferring, assigning to Bonneville Collections or otherwise authorizing Bonneville Collections to collect Plaintiff's debt less than 60 days from Plaintiff receiving

a final notice before extraordinary collection action (as defined by § 48-303(4)(a)) from Interpath.

63.     Interpath's extraordinary collection action against Plaintiff violated I.C. § 48-304(1)(b)-(e).

64.     Interpath did not send a final notice before extraordinary collection action (as defined by § 48-303(4)(a)) prior to December 19, 2023.

65.     On January 11, 2024, Plaintiff was charged $0.36 interest on his Interpath debt prior to 60 days passing from the Plaintiff's receipt of both a Consolidated Summary of Services and the final notice before extraordinary collection action.

66.     Interpath engaged in an extraordinary collection action prior to 90 days following the resolution of Plaintiff's dispute and/or appeal of his charges. By engaging in an extraordinary collection action during a good-faith dispute and without sending Plaintiff statutorily required detailed invoices, a CSS or Final Notice in accordance with IPACT's requirements, Defendant violated IPACT.

67.     As Interpath admitted, its process for sending invoices to collections is automatic, and countless others have undoubtedly been subject to illegal debt-collection practices under IPACT.

68.     Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including equitable relief, actual damages or statutory damages of $1,000 per violation (whichever is greater), prejudgment and post judgment interest, and reasonable attorneys' fees and costs.

First Amended Class Action Complaint – Demand for Jury Trial                    Page 18 of 37

69.     Plaintiff and Class Members seek, where the Court finds a party has willfully or knowingly violated Idaho Code § 48-304 and Idaho Code § 48-306, treble (three times) the amount of actual damages, or three thousand dollars ($3,000), whichever is greater for willful or knowing violations; and their costs and reasonable attorneys' fees, pursuant to Idaho Code § 48-311.

**COUNT II**
**VIOLATION OF THE IDAHO PATIENT ACT—DEFECTIVE FINAL NOTICE**
**BEFORE EXTRAORDINARY COLLECTION ACTION**
**(Against Praxis)**

70.     Plaintiff repeats the allegations in all the foregoing paragraphs as if fully set forth herein, and brings this Count on behalf of himself and the Class.

71.     Praxis is a "health care provider" and a "health care facility" within the meaning of Idaho Code § 48-303(5)–(6). Prairie Family Medicine is the health care facility Plaintiff visited, and Praxis is the entity that provided goods and services to Plaintiff during his visit.

72.     Praxis authorized Interpath, directly or indirectly, to bill and to pursue collection on debt arising from services rendered at Praxis facilities using a final notice that omits the patient's telephone number and the statement that an itemized list is available upon request, and that therefore fails to satisfy Idaho Code § 48-303(4)(a)(i) and (iv). Praxis took extraordinary collection action, directly or indirectly, without a compliant final notice, in violation of IPACT.

73.     Plaintiff and the Class seek actual damages or statutory damages of $1,000 per violation, whichever is greater; treble actual damages or $3,000, whichever is greater,

for willful or knowing violations; and their costs and reasonable attorneys' fees, pursuant to Idaho Code § 48-311.

## COUNT III
## VIOLATION OF THE IDAHO PATIENT ACT—FAILURE TO PROVIDE A CONSOLIDATED SUMMARY OF SERVICES
### (Against Interpath)

74.    Plaintiff repeats the allegations in all the foregoing paragraphs as if fully set forth herein, and brings this Count on behalf of himself and the Class.

75.    Interpath is a "health care provider" and a "health care facility" within the meaning of Idaho Code § 48-303(5)–(6), and Plaintiff and each Class member is a "patient" within the meaning of Idaho Code § 48-303(8).

76.    Before taking any extraordinary collection action, IPACT required that Plaintiff and each Class member receive, free of charge, a consolidated summary of services containing the information specified in Idaho Code § 48-303(1)(a). Idaho Code § 48-304(1)(b). Interpath sent Plaintiff no consolidated summary of services, and admits that it has not sent a consolidated summary of services to any patient during the relevant period.

77.    Interpath nonetheless took extraordinary collection action against Plaintiff and the Class by selling, transferring, assigning, or referring their accounts to a third-party collection agency. Idaho Code § 48-303(3)(a)(i). Its failure to provide a consolidated summary of services before doing so violates IPACT.

78.    Interpath's violation was willful or knowing: it has been aware of IPACT since 2020 yet sends no consolidated summary of services to any patient. Idaho Code § 48-311(3).

79.    Interpath bears the burden of proving its compliance with each prerequisite of IPACT before taking an extraordinary collection action, Idaho Code § 48-307, and cannot carry

First Amended Class Action Complaint – Demand for Jury Trial                    Page 20 of 37

that burden. Because Interpath's billing and referral practices are automated and uniform—and because it admits referring 363,495 patient accounts to a third-party collector—the Class was subjected to the same violation. Plaintiff and the Class seek actual damages or statutory damages of $1,000 per violation, whichever is greater; treble actual damages or $3,000, whichever is greater, for willful or knowing violations; and their costs and reasonable attorneys' fees, pursuant to Idaho Code § 48-311.

## COUNT IV
## VIOLATION OF THE IDAHO PATIENT ACT—FAILURE TO PROVIDE A CONSOLIDATED SUMMARY OF SERVICES
### (Against Praxis)

80.     Plaintiff repeats the allegations in all the foregoing paragraphs as if fully set forth herein, and brings this Count on behalf of himself and the Class.

81.     Praxis is a "health care provider" and a "health care facility" within the meaning of Idaho Code § 48-303(5)–(6). Prairie Family Medicine is the health care facility Plaintiff visited, and Praxis is the entity that provided goods and services to Plaintiff during his visit.

82.     As the health care facility the patient visited, Praxis was required to ensure that Plaintiff and each Class member received a consolidated summary of services within sixty days of the date of service. Idaho Code § 48-304(1)(b). No consolidated summary of services was sent by Praxis or by any party acting on its behalf.

83.     Praxis authorized Interpath, directly or indirectly, to take extraordinary collection action on debt arising from services rendered at Praxis facilities without first providing a consolidated summary of services. Any exemption under Idaho Code § 48-309 is unavailable because Defendants did not otherwise comply with section 48-304 and did not provide a compliant final notice. Praxis's failure violates IPACT.

84.    Praxis bears the burden of proving its compliance with each prerequisite of IPACT before an extraordinary collection action is taken, directly or indirectly, on debt arising from services rendered at its facilities. Idaho Code § 48-307. Plaintiff and the Class seek actual damages or statutory damages of $1,000 per violation, whichever is greater; treble actual damages or $3,000, whichever is greater, for willful or knowing violations; and their costs and reasonable attorneys' fees, pursuant to Idaho Code § 48-311.

## COUNT V
## VIOLATION OF THE IDAHO PATIENT ACT—EXTRAORDINARY COLLECTION ACTION BEFORE THE REQUIRED NOTICES AND WAITING PERIODS
### (Against Interpath)

85.    Plaintiff repeats the allegations in all the foregoing paragraphs as if fully set forth herein, and brings this Count on behalf of himself and the Class.

86.    Interpath is a "health care provider" and a "health care facility" within the meaning of Idaho Code § 48-303(5)–(6), and Plaintiff and each Class member is a "patient" within the meaning of Idaho Code § 48-303(8).

87.    Interpath's sale, transfer, assignment, or referral of a patient's account to a third-party collection agency is an extraordinary collection action. Idaho Code § 48-303(3)(a)(i). Interpath assigned Plaintiff's account to Bonneville Collections on or before December 19, 2023.

88.    IPACT barred that action until sixty days had passed from Plaintiff's receipt of a valid final notice, and until at least ninety days had passed from Plaintiff's receipt of the later of a consolidated summary of services or final notice and from final resolution of his good-faith dispute. Idaho Code § 48-303(3)(a)(i), § 48-304(1)(e). Interpath referred Plaintiff's account

while his good-faith dispute remained unresolved, before the required periods ran, and without any valid final notice or consolidated summary of services having issued.

89.    Interpath admits its process for sending accounts to collections is automated, referring accounts on a fixed timetable regardless of whether IPACT's prerequisites have been satisfied. Its extraordinary collection action against Plaintiff and the Class violates IPACT.

90.    Interpath's violation was willful or knowing. Idaho Code § 48-311(3).

91.    Interpath bears the burden of proving its compliance with each prerequisite of IPACT before taking an extraordinary collection action, Idaho Code § 48-307, and cannot carry that burden. Because Interpath's billing and referral practices are automated and uniform—and because it admits referring 363,495 patient accounts to a third-party collector—the Class was subjected to the same violation. Plaintiff and the Class seek actual damages or statutory damages of $1,000 per violation, whichever is greater; treble actual damages or $3,000, whichever is greater, for willful or knowing violations; and their costs and reasonable attorneys' fees, pursuant to Idaho Code § 48-311.

## COUNT VI
## VIOLATION OF THE IDAHO PATIENT ACT—EXTRAORDINARY COLLECTION ACTION BEFORE THE REQUIRED NOTICES AND WAITING PERIODS
### (Against Praxis)

92.    Plaintiff repeats the allegations in all the foregoing paragraphs as if fully set forth herein, and brings this Count on behalf of himself and the Class.

93.    84.    Praxis is a "health care provider" and a "health care facility" within the meaning of Idaho Code § 48-303(5)–(6). Prairie Family Medicine is the health care facility Plaintiff visited, and Praxis is the entity that provided goods and services to Plaintiff during his visit.

94.    85.    Praxis authorized the assignment of Plaintiff's account—and the accounts of Class members—to a third-party collection agency, directly or indirectly, on debt arising from services rendered at its facilities, while good-faith disputes remained unresolved and before the notices and waiting periods IPACT requires. Idaho Code § 48-303(3)(a)(i), § 48-304(1)(e). Praxis's extraordinary collection action violates IPACT.

95.    86.    Praxis bears the burden of proving its compliance with each prerequisite of IPACT before an extraordinary collection action is taken, directly or indirectly, on debt arising from services rendered at its facilities. Idaho Code § 48-307. Plaintiff and the Class seek actual damages or statutory damages of $1,000 per violation, whichever is greater; treble actual damages or $3,000, whichever is greater, for willful or knowing violations; and their costs and reasonable attorneys' fees, pursuant to Idaho Code § 48-311.

### COUNT VII
### <u>VIOLATIONS OF IDAHO CONSUMER PROTECTION ACT</u>
(Against Praxis and Interpath)

96.    Plaintiff repeats the allegations in all of the foregoing paragraphs as if fully set forth herein.

97.    Plaintiff brings this count on behalf of himself and all members of the Class harmed by Defendants' illegal debt-collection practices.

98.    Plaintiff is a "person" who purchased or was solicited to purchase services within the meaning of Idaho Code § 48-601 and § 48-608.

99.    Praxis and Interpath are each individually a "person" as defined by Idaho Code § 48- 601(1) and collection of patient debt is "trade" and "commerce," within the meaning of Idaho Code § 48-602.

100. Praxis and Interpath's conduct as alleged herein pertained to the provision of medical services.

101. The ICPA prohibits unfair or deceptive acts or practices in the conduct of trade or commerce, including conduct that has the capacity, tendency, or likelihood to mislead consumers. Idaho Code § 48-603.

102. Plaintiff was expressly informed by Praxis that he would not be charged for the second blood draw necessitated by technician error.

103. Notwithstanding that representation, Defendants billed Plaintiff for charges associated with the second blood draw.

104. Plaintiff promptly and repeatedly disputed those charges and informed Defendants that the charges were inconsistent with the representations made to him.

105. Despite knowledge of Plaintiff's dispute and the circumstances surrounding the charges, Defendants continued to represent that payment was due.

106. Defendants further escalated their collection efforts by issuing invoices labeled "FINAL NOTICE" and by referring Plaintiff's account to a third-party collection agency while the charges remained disputed.

107. Defendants' conduct—including billing for services allegedly promised to be free, representing that payment was owed despite a known and ongoing dispute, and invoking the collections process to pressure payment—constitutes unfair or deceptive acts or practices within the meaning of Idaho Code § 48-603.

108. Defendants engaged in such conduct as part of a broader pattern or practice, including the use of automated systems that refer accounts to collections without regard to

pending disputes.

109.    Interpath engaged in false, misleading, deceptive, and unconscionable acts under Idaho Code § 48-603 by charging Plaintiff for services it knew or should have known were not owed and by engaging in illegal debt-collection practices during a good-faith dispute.

110.    Praxis engaged in false, misleading, deceptive, and unconscionable acts and practices in violation of Idaho Code § 48-603, including but not limited to:

a. Representing to Plaintiff on multiple occasions that he would not be charged for the second blood draw arising from the technician's error, when in fact Plaintiff was charged for that draw and Praxis took no meaningful action to ensure the charge was corrected;

b. Maintaining a standing referral and billing arrangement with Interpath under which Praxis directs patient specimens to Interpath for testing and billing, while knowing that Interpath's automated systems forward unresolved patient balances to third-party collection agencies 90 days after insurance receipt, regardless of patient disputes or IPACT compliance;

c. Operating a closed-loop Praxis-must-confirm-before-Interpath-corrects protocol under which Interpath refuses to correct disputed charges without affirmative written confirmation from Praxis, while Praxis systematically fails to provide such confirmation, with the foreseeable and intended result that disputed charges proceed to extraordinary collection action regardless of the dispute;

d. Representing to patients—including Plaintiff—that Praxis would contact

Interpath to correct disputed charges, while in fact Praxis took no such action and never provided the confirmation it knew Interpath required;

e. Failing to provide patients with the Consolidated Summary of Services required by Idaho Code § 48-303(1), thereby depriving patients of the information necessary to identify, evaluate, and resolve charges before they were referred for extraordinary collection action; and

f. Authorizing Interpath to bill, collect, and pursue collection in Interpath's name on debts arising from services rendered at Praxis facilities, without first ensuring that patients received the notices, dispute opportunities, and resolution processes required by IPACT.

111.    As a result of Defendants' conduct, Plaintiff was subjected to collections and fees in excess of what he owed Defendants.

112.    As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff and Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages.

113.    This loss includes, but is not limited to, exposure to collection activity, informational harm through multiple different invoices for the same service followed by economic pressure to pay charges that Plaintiff disputed and contends were not owed, and interference with Plaintiff's ability to resolve the billing dispute prior to collection efforts.

114.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including damages, injunctive relief, costs, and attorneys' fees.

## COUNT VIII
## CIVIL CONSPIRACY
### (Against Praxis and Interpath)

115.    Plaintiff repeats and incorporates by reference the allegations of all foregoing paragraphs as if fully set forth herein.

116.    Plaintiff brings this Count on behalf of himself and all members of the Class.

117.    Under Idaho law, civil conspiracy "exists only if there is an agreement between two or more to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." Wesco Autobody Supply, Inc. v. Ernest, 243 P.3d 1069 (Idaho 2010). The cause of action is grounded in the underlying civil wrong committed in furtherance of the conspiracy. McPheters v. Maile, 64 P.3d 317 (Idaho 2003).

118.    Praxis and Interpath are separately organized Oregon corporations with separate legal identities. Each is capable of agreeing with the other within the meaning of Idaho civil conspiracy law.

119.    Praxis and Interpath agreed—expressly or by course of conduct—to a joint billing and debt-collection scheme by which charges arising from medical services rendered at Praxis facilities are billed by, and collected by or in the name of, Interpath, using automated processes that systematically circumvent IPACT's statutory prerequisites and ICPA's prohibitions on unfair and deceptive practices.

120.    The existence and terms of the agreement are evidenced by the structural and operational facts pled herein, including:

    a. Praxis and Interpath are commonly owned and closely held by Adaugeo Healthcare Solutions, LLC;

    b.    Praxis    and    Interpath    share    common    managers,    directors,    and

administrative systems, and operate from the same headquarters address in Pendleton, Oregon;

c. Interpath regularly performs laboratory testing for Praxis-affiliated clinics, including Prairie Family Medicine, pursuant to a standing referral arrangement;

d. Praxis routinely directs its patients' specimens to Interpath for testing, and Interpath routinely bills those patients directly under the parties' established protocol;

e. Interpath's automated billing system forwards unresolved balances to third-party collection agencies 90 days after insurance receipt, irrespective of patient disputes or IPACT compliance, as Interpath itself confirmed in writing to Plaintiff;

f. When patients dispute charges, Interpath refuses to issue corrections without affirmative written confirmation from Praxis, while Praxis takes no meaningful action to provide such confirmation, with the predictable and intended result that the patient's account is forwarded to collections regardless of the dispute; and

g. The scheme operates uniformly across Praxis-Interpath patient interactions, as evidenced by the consistency of Plaintiff's experience with the practices described in the Better Business Bureau complaints and other consumer reports referenced in the foregoing paragraphs.

121. The objects of the conspiracy include violations of IPACT, violations of ICPA, and the systematic collection of disputed and unauthorized medical charges through extraordinary collection actions taken without IPACT-compliant notice or process.

122. In furtherance of the conspiracy, Defendants committed numerous overt acts, including but not limited to: billing Plaintiff and Class members for charges that

Defendants knew or should have known were not properly owed; refusing to correct invoices despite patient disputes; transmitting "Final Notice" and "Collections" warnings without satisfying IPACT's notice requirements; and assigning Plaintiff's and Class members' accounts to third-party collection agencies during good-faith disputes.

123.    As a direct and proximate result of the conspiracy and the overt acts taken in furtherance thereof, Plaintiff and Class members have suffered the injuries and damages described herein, for which Praxis and Interpath are jointly and severally liable.

124.    Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, statutory damages and penalties under IPACT and ICPA, injunctive relief, costs, and attorneys' fees.

**COUNT IX**
**JOINT VENTURE / JOINT ENTERPRISE LIABILITY**
**(Against Praxis and Interpath)**

125.    Plaintiff repeats and incorporates by reference the allegations of all foregoing paragraphs as if fully set forth herein.

126.    Plaintiff brings this Count on behalf of himself and all members of the Class.

127.    Under Idaho law, a joint venture is established by: (1) a contribution of money, property, effort, knowledge, skill, or other assets to a common undertaking; (2) a joint property interest in the subject matter of the venture and a right of mutual control or management of the enterprise; (3) an expectation of profits; (4) a right to participate in those profits; and (5) a limitation of the objective to a single undertaking or enterprise. *Rhodes v. Sunshine Mining Co.*, 742 P.2d 417 (Idaho 1987); *Saint Alphonsus Reg'l Med. Ctr., Inc. v. Krueger*, 861 P.2d 71 (Idaho Ct. App. 1992). A joint venture may be express or implied from conduct, and its existence is a question of fact. *Id.* "Where a joint venture

exists, each of the parties is the agent of the others and each is likewise a principal of the others so that the act of one is the act of all." *State, Dep't of Fin. v. Offshore Fin. Ltd.*, 858 P.2d 782 (Idaho Ct. App. 1993).

128.    Praxis and Interpath are engaged in a joint venture for the integrated provision and billing of medical services to patients in Idaho, Oregon, and Washington. The elements of joint venture are satisfied:

a. Contribution. Praxis contributes clinical facilities, providers, patient referrals, and administrative resources. Interpath contributes laboratory testing capacity, billing infrastructure, and collection systems.

b. Joint interest and mutual control. Praxis and Interpath are commonly owned and closely held by Adaugeo Healthcare Solutions, LLC, share common managers, directors, and administrative systems, and operate from a common headquarters in Pendleton, Oregon. The day-to-day operational division of clinical and laboratory functions does not defeat mutual control where, as here, the parties' shared ownership and management permit each to direct or constrain the conduct of the other.

c. Expectation of profits. Both parties expect to derive profit from the integrated arrangement, including through cross-referrals, integrated billing, shared administrative cost-spreading, and collection revenue.

d. Right to participate in profits. Through the Adaugeo ownership structure and shared management, both parties participate—directly or indirectly—in the

revenues generated by the integrated arrangement.

e. Common undertaking. The parties' common undertaking is the coordinated provision and billing of clinical and laboratory services to patients within the Adaugeo healthcare network.

129.    Because Praxis and Interpath operate as joint venturers, each is the agent of the other, each is the principal of the other, and the acts of one constitute the acts of both for purposes of liability arising from the joint venture's conduct.

130.    Accordingly, Praxis is liable as a joint venturer for Interpath's violations of IPACT and ICPA pleaded in Counts I, III, V and VII, and Interpath is liable as a joint venturer for Praxis's violations of IPACT and ICPA, in each case to the full extent provided by Idaho law.

131.    As a direct and proximate result of the joint venture's conduct, Plaintiff and Class members have suffered the injuries and damages described herein, for which Praxis and Interpath are jointly and severally liable.

132.    Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, statutory damages and penalties under IPACT and ICPA, injunctive relief, costs, and attorneys' fees.

## COUNT X
## CONCERT OF ACTION / AIDING AND ABETTING
### (Against Praxis, in the Alternative to Counts VIII and IX)

133.    Plaintiff repeats and incorporates by reference the allegations of all foregoing paragraphs as if fully set forth herein.

134.    Plaintiff brings this Count on behalf of himself and all members of the Class, in the alternative to Counts IV and V.

135.    Idaho recognizes civil liability for concert of action under Restatement (Second) of Torts § 876(b): one who "knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself" is subject to liability for the resulting harm. *Price v. Aztec Ltd., Inc.*, 701 P.2d 294 (Idaho Ct. App. 1985). Where the assistance or encouragement is a substantial factor in causing the resulting tort, the assisting party is jointly and severally liable for the indivisible harm. Id.; Smith v. Thompson, 655 P.2d 116 (Idaho Ct. App. 1982).

136.    Praxis knew that Interpath's billing and collection practices violated IPACT and ICPA. Among other indicators of Praxis's knowledge:

a. Praxis knew that Interpath's automated billing system forwarded unresolved balances to third-party collection agencies after 90 days, regardless of whether IPACT's notice requirements had been satisfied or whether the patient was engaged in a good-faith dispute;

b. Praxis was repeatedly contacted by patients, including Plaintiff, who disputed Interpath's charges and sought correction; and

c. Praxis knew that its own representations to patients—including the assurance to Plaintiff that he would not be charged for the second blood draw—were not being honored in Interpath's billing.

137.    Despite this knowledge, Praxis provided substantial assistance to Interpath's unlawful conduct by, among other things: (a) maintaining the standing referral arrangement under which patient specimens were routinely directed to Interpath for billing; (b) declining to issue corrections, retractions, or written confirmations to Interpath that

would have prevented the unlawful collection actions; (c) directing patients seeking correction of Interpath's bills back to Interpath rather than acting to correct the bills itself; and (d) participating in the closed-loop "Praxis must confirm before Interpath corrects" protocol that Praxis knew operated to insulate Interpath's automated collection process from patient disputes.

138.    Praxis's substantial assistance was a substantial factor in the IPACT and ICPA violations suffered by Plaintiff and Class members.

139.    As a direct and proximate result of Praxis's substantial assistance to Interpath's unlawful conduct, Plaintiff and Class members have suffered the injuries and damages described herein. Praxis is jointly and severally liable with Interpath for those injuries.

140.    Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including damages, statutory damages and penalties under IPACT and ICPA, injunctive relief, costs, and attorneys' fees.

## COUNT XI
## DECLARATORY JUDGMENT
## 28 USC §§ 2201–2202
## (Against Interpath and Praxis)

141.    Plaintiff repeats and incorporates by reference the allegations of all foregoing paragraphs as if fully set forth herein.

142.    An actual, present, and justiciable controversy exists between Plaintiff and Defendants concerning the proper interpretation of the Idaho Patient Act, Idaho Code §§ 48-301 *et seq.*, including whether the Act permits substantial compliance with its statutory requirements before a patient's account may be referred to a collection agency.

143.    Plaintiff contends that the Idaho Patient Act requires compliance with each statutory prerequisite before a healthcare provider or its agent may refer a patient's account to collections, and that the Act does not recognize substantial compliance as sufficient to satisfy those statutory requirements.

144.    Defendants contend otherwise. In their First Amended Answer, Defendants assert as an affirmative defense that they "substantially complied" with the Idaho Patient Act, thereby placing the legal standard governing compliance with the Act squarely in dispute.

145.    The parties' dispute presents a concrete and immediate controversy concerning their respective rights and obligations under the Idaho Patient Act. Resolution of that controversy will determine the legal standard governing Defendants' collection referral practices and the rights of Plaintiff and the proposed Class.

146.    A judicial declaration will terminate the uncertainty giving rise to this controversy and will clarify the parties' respective rights and obligations under the Idaho Patient Act.

## **PRAYER FOR RELIEF**

Plaintiff, on his own behalf and on behalf of the Class, prays for the following relief:

A. An order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and his attorneys as Class Counsel;

B. The Court enter judgment in favor of Plaintiff and Class Members against Defendant and award actual or statutory damages, whichever is greater, for members of the Class;

C. For a declaration pursuant to 28 U.S.C. §§ 2201–2202 that:

a. The Idaho Patient Act requires compliance with its statutory prerequisites before a healthcare provider or its agents may refer a patient's account to a collection agency;

b. The Idaho Patient Act does not recognize substantial compliance as satisfying those statutory prerequisites; and

c. Defendants' rights and obligations under the Idaho Patient Act are governed by the statutory requirements enacted by the Idaho Legislature;

D. Pre-and post- judgment interest on all amounts awarded;

E. Other injunctive relief as the Court may deem appropriate; and

F. An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

Dated July 22, 2026

*Jaren Wieland*

Jaren Wieland, ISB No. 8265
MOONEY WIELAND WARREN
512 W. Idaho St., Suite 103
Boise, ID 83702
t: 208.401.9219
f: 888.234.8543
jaren.wieland.service@mooneywieland.com

Aaron M. Zigler (Pro Hac Vice)
Nidya S. Gutierrez (Pro Hac Vice)
Lawrence V. Ashe (Pro Hac Vice)
ZIGLER LAW GROUP, LLC
308 South Jefferson Street, Suite 333
Chicago, Illinois 60661
t: 312.535.5995
aaron@ziglerlawgroup.com
nidya@ziglerlawgroup.com
larry@ziglerlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

Stoel Rives LLP
Wendy J. Olson
Wendy.olson@stoel.com
Thomas R. Johnson
Tom.johnson@stoel.com
Stephen Galloway
Stephen.galloway@stoel.com
Cory Michael Carone
Cory.carone@stoel.com


_Jaren Wieland_
Jaren Wieland
Attorney for Plaintiff