WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
CORY M. CARONE, Bar No. 11422
cory.carone@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000
Facsimile: 208.389.9040

TOM R. JOHNSON, JR. (*Pro Hac Vice*)
tom.johnson@stoel.com
STEPHEN H. GALLOWAY (*Pro Hac Vice*)
stephen.galloway@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NOLAN ANDERSON, on behalf of himself individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INTERPATH LABORATORY, INC., an Oregon corporation, and PRAXIS HEALTH, P.C., an Oregon Professional Corporation,<br><br>Defendants. | Case No. 2:24-cv-00341-AKB<br><br>**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 1
III. LEGAL STANDARD ..... 4
IV. ARGUMENT ..... 5
A. Civil Conspiracy (Count 8), Joint Venture/Joint Enterprise Liability (Count 9), and Concert of Action/Aiding and Abetting (Count 10) Are Not Causes of Action. ..... 5
B. The First Amended Complaint Fails to State a Claim for Civil Conspiracy (Count 8). ..... 7
C. The First Amended Complaint Fails to State a Claim for Joint Venture/Joint Enterprise Liability (Count 9). ..... 9
D. The First Amended Complaint Fails to State a Claim for Concert of Action/Aiding and Abetting (Count 10). ..... 12
E. The First Amended Complaint Fails to State an IPACT Claim Against Praxis (Counts 2, 4, and 6). ..... 14
V. CONCLUSION ..... 15

## I. INTRODUCTION

This putative class action stems from a billing dispute over a laboratory charge. After receiving medical treatment at a clinic owned by Defendant Praxis Health, P.C. ("Praxis"), Plaintiff Nolan Anderson received a bill from Defendant Interpath Laboratory, Inc. ("Interpath") for laboratory services performed in connection with that treatment. Plaintiff contends that Interpath's billing and collection practices violated the Idaho Patient Act and the Idaho Consumer Protection Act.

What began as a two-count case has since expanded into the eleven-count First Amended Complaint. The new claims do not reflect newly discovered misconduct or additional facts uncovered in discovery. Rather, Plaintiff has repackaged the substance of his original two claims into eleven claims without facts to support them. This motion targets six of those claims. Counts 8, 9, and 10 improperly cast civil conspiracy, joint venture liability, and "concerted action" as independent causes of action instead of as vicarious liability theories. Counts 2, 4, and 6 seek to hold Praxis liable for Interpath's conduct based on the bare assertion that Praxis "authorized" it, while pleading no facts in support despite the parties already engaging in substantial discovery.

Plaintiff cannot manufacture the appearance of a larger case by relabeling liability theories as causes of action or by pleading conclusions without facts. Counts 2, 4, 6, 8, 9, and 10 in the First Amended Complaint should be dismissed for failure to state a claim.

## II. BACKGROUND[1]

Interpath is an Oregon corporation that provides clinical laboratory services. (Dkt. 43 ¶¶ 3, 12.) Praxis is an Oregon corporation that operates healthcare clinics and facilities. (*Id.* ¶ 3.)

[1] For purposes of this motion only, Defendants recount the facts as alleged in the First Amended Complaint to comply with Fed. R. Civ. P. 12(b)(6)'s standard. Nothing should be construed as an acknowledgment or admission of the veracity of Plaintiff's allegations.

Interpath owns Praxis through its interest in Adaugeo Healthcare Solutions, LLC. (*Id.*) Interpath and Praxis share common managers, directors, administrative systems and the same headquarters address in Pendleton, Oregon. (*Id.* ¶¶ 3, 11, 12.) Interpath also regularly provides laboratory testing services for patients treated at Praxis clinics. (*Id.* ¶ 3.)

In August 2023, Plaintiff received medical treatment at one of Praxis's clinics, Prairie Family Medicine ("Prairie"), where he underwent a blood draw for laboratory testing. (*Id.* ¶¶ 4, 23.) Later that day, Prairie asked Plaintiff to return the next day for a second blood draw "due to technician error," but "assured [him] that he would not be charged for the cost associated with the second blood draw." (*Id.* ¶ 23.) Plaintiff returned the following day, and the new specimen was sent to Interpath for testing. (*Id.*)

Plaintiff received an invoice from Interpath approximately two months later. (*Id.* ¶ 24, Ex. A.) The invoice included four charges for tests that Interpath ran and, as promised, a single charge for a "Draw Fee." (*Id.*, Ex. A-1.) Plaintiff, however, alleges that the invoice erroneously "included charges for both the first and second blood draw[s]." (*Id.* ¶ 24.) Interpath explained to Plaintiff that "the charges for the labs on 8/16/2023 and 8/15/2023 are different services" and advised that any billing adjustment would require confirmation from his provider at Prairie. (*Id.*, Ex. B-1.) Plaintiff then called Prairie, whose representative allegedly agreed he should not be charged for the technician's error and represented that Prairie would contact Interpath regarding the disputed charges. (*Id.* ¶ 27.) A week later, Interpath still had not heard from Prairie. (*Id.* ¶ 28.) Interpath again explained that they could not revise the invoice until they received confirmation from Prairie.

In the meantime, Plaintiff received another invoice from Interpath advising him to remit payment to avoid further action on his account. (*Id.* ¶ 29, Ex. C.) Eventually, on December 19, 2023, Plaintiff received correspondence notifying him that Interpath had assigned his unpaid

balance to collections. (*Id.* ¶ 32, Ex. E.) By January 4, 2024, Interpath still had not heard from Prairie. (*Id.* ¶ 34.) Regarding the collections letter, an Interpath representative told Plaintiff that Interpath's "system automatically forwards any balance on the account that remains unresolved or outstanding to a collection agency after 90 days from the received date from the insurance." (*Id.*)

Cobbling together this experience and three screenshots of anonymous complaints on the Better Business Bureau website, Plaintiff filed this putative class action against Interpath and Praxis in July 2024. (*See* Dkt. 1.) Plaintiff's original Complaint asserted two causes of action: (1) violation of the Idaho Patient Act, Idaho Code section 48-301, *et seq.* ("IPACT") and (2) violation of the Idaho Consumer Protection Act, Idaho Code section 48-601, *et seq.* ("ICPA"). (*Id.* ¶¶ 48-65.) IPACT regulates when healthcare providers may refer patient accounts to collections by requiring certain billing statements and notices beforehand. Plaintiff alleges that Interpath violated those requirements by referring his account, and purportedly the accounts of other patients, to collections through an automated process that forwards unpaid balances after ninety days. (*Id.* ¶¶ 48-55.)

Plaintiff has now amended his Complaint to allege eleven causes of action. (*See generally* Dkt. 43.) Although the underlying facts remain unchanged, the First Amended Complaint expands Plaintiff's single IPACT claim into six separate counts. (*Id.* ¶¶ 55-95.) Counts 1, 3, and 5 allege that Interpath's billing statements and collection efforts violated IPACT's notice and timing requirements. (*Id.* ¶¶ 55-69, 74-79, 85-91.) Counts 2, 4, and 6 assert parallel IPACT claims against Praxis—not based on any independent misconduct by Praxis, but on the theory that Praxis "authorized" Interpath's alleged IPACT violations. (*Id.* ¶¶ 70-73, 80-84, 92-95.)

Counts 8, 9, and 10 seek to accomplish a similar goal. Count 8 (titled "Civil Conspiracy") alleges that Praxis and Interpath conspired to engage in the challenged billing and collection

practices and seeks to hold them jointly and severally liable for the same relief sought under Plaintiff's statutory claims. (*Id.* ¶¶ 115-124.) Count 9 (titled "Joint Venture/Joint Enterprise Liability") alleges that Praxis and Interpath operated a joint venture and seeks the same relief. (*Id.* ¶¶ 125-132.) Count 10 (titled "Concert of Action/Aiding and Abetting") alleges that Praxis substantially assisted Interpath's misconduct and, as with Counts 8 and 9, seeks to hold Praxis and Interpath jointly and severally liable. (*Id.* ¶¶ 133-140.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a claim if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Dismissal "may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotes and citation omitted). "In federal diversity actions, the court must look to state law to determine whether the claim exists, but the manner in which such claims are raised is still governed by federal [pleading] standards." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1051 (N.D. Cal. 2004).

Under the federal pleading standards, a complaint "does not need detailed factual allegations," but it must set forth "more than labels and conclusions, and a formulaic recitation of the elements[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that[,]" taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court is not bound "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell*

*v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss[.]" *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (citation omitted).

## IV. ARGUMENT

Count 8 (civil conspiracy), Count 9 (joint venture/joint enterprise liability), and Count 10 (concerted action/aiding and abetting) are not cognizable causes of action. Even if they were, the First Amended Complaint fails to allege facts supporting the application of these legal doctrines. Plaintiff also fails to supply factual support for his new IPACT claims against Praxis (Counts 2, 4, and 6) apart from the bare assertion that Praxis "authorized" Interpath's conduct. This threadbare assertion falls short of the standards established in *Twombly*. Accordingly, the Court should dismiss Counts 2, 4, 6, 8, 9, and 10 for failure to state a claim.

### A. Civil Conspiracy (Count 8), Joint Venture/Joint Enterprise Liability (Count 9), and Concert of Action/Aiding and Abetting (Count 10) Are Not Causes of Action.

Counts 8, 9, and 10 fail legally because they are not cognizable causes of action. They assert legal doctrines that, if proven, may give rise to some form of derivative liability. Under Idaho law, however, derivative liability theories and other standalone remedies are not causes of action. *See, e.g.*, *Cave Bay Cmty. Servs., Inc. v. Lohman*, 583 P.3d 871, 876 (Idaho 2026) ("[S]pecific performance is a *remedy* for a breach of contract cause of action—not an independent cause of action." (emphasis in original)); *Navo v. Bingham Mem'l Hosp.*, 373 P.3d 681, 693 (Idaho 2016) ("[A]pparent authority is not itself a cause of action; rather, it is a legal theory through which agency arises."). Thus, theories pleaded as claims are subject to early dismissal for failure to state a claim. *E.g.*, *Boren v. Gadwa*, 578 P.3d 861, 877 (Idaho 2024) (affirming Rule 12(b)(6) dismissal of civil conspiracy claim because it is not a cause of action under Idaho law); *Hopper v. Swinnerton*, 317 P.3d 698, 708 (Idaho 2013) (same).

Idaho's treatment of civil conspiracy illustrates the point. For more than a century, Idaho courts have made clear that "civil conspiracy" is not a cause of action and cannot be pleaded as such. *See Tricore Invs., LLC v. Est. of Warren*, 485 P.3d 92, 121 (Idaho 2021) ("A civil conspiracy is not, on its own, a claim for relief."); *Dahlquist v. Mattson*, 233 P. 883, 886 (Idaho 1925) (same). Civil conspiracy serves only as a mechanism for holding one conspirator liable for the conduct of the other; it creates neither an independent injury nor an independent entitlement to damages. *Saint Alphonsus Diversified Care, Inc. v. MRI Assocs., LLP*, 334 P.3d 780, 797 n.4 (Idaho 2014). So even if a civil conspiracy occurred, the plaintiff still must allege as a cause of action the tort that allegedly occurred and then seek to hold one or more of the conspirators vicariously liable for the tort that they themselves did not commit. *Id.*

The same principle applies to the theories pleaded in Counts 9 and 10. Joint venture liability, concerted action, and "aiding and abetting" do not identify an independent legal harm. Rather, each is a mechanism by which liability for an underlying wrong may be extended from one actor to another. Joint venture liability, for example, permits one participant in a joint venture to be held liable for the acts of another participant. *Maselli v. Ginner*, 809 P.2d 1181, 1184 (Idaho Ct. App. 1991); *Rhodes v. Sunshine Min. Co.*, 742 P.2d 417, 422 (Idaho 1987). Likewise, "concerted action" serves only to impose joint and several liability on multiple tortfeasors under Idaho law. *See* Idaho Code § 6-803(5). These doctrines address who may be liable for an existing claim; they do not create new claims themselves.

Plaintiff may point to *Moonlight Mountain Recovery, Inc. v. McCoy*, No. 1:24-CV-00012-BLW, 2025 WL 371020, at *4 (D. Idaho Feb. 3, 2025) and *Tuttle v. Bohnenkamps Whitewater Customs, Inc.*, No. 1:15-CV-00314-DCN, 2023 WL 5045099, at *4 (D. Idaho Aug. 7, 2023), both of which refer to "aiding and abetting" as a civil claim under state law. But those decisions rest on

a chain of authority that does not support this inference.[2] Traced to its source, that line of authority rests on just two cases. First, it borrows the elements of a statutory aiding and abetting claim specific to the Idaho Securities Act from *State, Dep't of Fin. v. Tenney*, 858 P.2d 782, 788 (Idaho Ct. App. 1993). Second, it relies on *O'Banion v. Select Portfolio Servs., Inc.*, which expressly states that some jurisdictions do not recognize aiding and abetting as a claim and that the Court would assume, for purposes of the motion, that Idaho did. No. 1:09-CV-249-EJL, 2010 WL 3834055, at *5 n.8 (D. Idaho Aug. 13, 2010). Thus, this line of cases does not provide Plaintiff with the authority he needs. The rule remains the same: theories of liability are not causes of action.

For these reasons, Plaintiff's claims for civil conspiracy, joint venture liability, and aiding and abetting in Counts 8, 9, and 10 are not viable causes of action. The sole purpose of these claims is to impose vicarious or joint and several liability on Defendants based on substantive claims already pleaded in the First Amended Complaint. If Plaintiff believes the facts support vicarious or joint and several liability, those allegations belong within the substantive causes of action themselves. But Idaho law does not permit a plaintiff to transform underlying theories of liability into claims merely to manufacture the appearance of a larger case.

**B. The First Amended Complaint Fails to State a Claim for Civil Conspiracy (Count 8).**

Count 8 fails for the additional reason that the First Amended Complaint does not plausibly allege a civil conspiracy between Interpath and Praxis. A civil conspiracy requires "an agreement between two or more [persons] to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *McPheters v. Maile*, 64 P.3d 317, 321 (Idaho 2003). Although

[2] *Moonlight* and *Tuttle* both cite to *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1208 (D. Idaho 2013) for support, and *Zazzali* relies on *O'Banion v. Select Portfolio Servs., Inc.*, No. 1:09-CV-249-EJL, 2010 WL 3834055 (D. Idaho Aug. 13, 2010) and *State, Dep't of Fin. v. Tenney*, 858 P.2d 782 (Idaho Ct. App. 1993).

an agreement may be inferred from the parties' conduct, *see* 15A C.J.S. Conspiracy § 13 (April 2026 Update), that inference must arise from facts, not conclusions, *Hill v. Gugin*, No. CV 94-0103-E-EJL, 1995 WL 341099, at *7 (D. Idaho Apr. 6, 1995). Furthermore, it is not enough to allege that two persons formed an agreement that eventually *resulted* in an injury. *See* 15A C.J.S. Conspiracy § 14 (April 2026 Update). "A civil conspiracy requires a specific intent to accomplish the contemplated wrong[.]" *Id.*

Count 8 alleges that Interpath and Praxis conspired to circumvent IPACT's statutory requirements and ICPA's prohibitions on unfair and deceptive practices. Specifically, Plaintiff alleges that Defendants

> agreed—expressly or by course of conduct—to a joint billing and debt-collection scheme by which charges arising from medical services rendered at Praxis facilities are billed by, and collected by or in the name of, Interpath, using automated processes that systematically circumvent IPACT's statutory prerequisites and ICPA's prohibitions on unfair and deceptive practices.

(Dkt. 43 ¶ 119.)

At most, the First Amended Complaint plausibly alleges that Interpath and Praxis formed a lawful patient referral agreement. It provides no facts from which the Court could infer that they agreed to accomplish that through unlawful means or to accomplish some other unlawful purpose.

The allegations Plaintiff offers in support of an "agreement" confirm this point. Plaintiff contends that the existence and terms of Defendants' alleged "joint billing and debt-collection scheme" are evidenced by Interpath and Praxis's common ownership, management, administrative systems, and headquarters address. (Dkt. 43 ¶ 120(a)-(b).) Those allegations show a relationship between the organizations but offer nothing to demonstrate an *agreement* between them, let alone an agreement to accomplish an unlawful objective. Common ownership and shared office space are ordinary features of affiliated businesses. If those lawful arrangements were enough to

plausibly allege conspiracy, nearly every parent and subsidiary organization could be haled into court upon civil conspiracy allegations despite having no involvement in the underlying conduct.

Plaintiff next points to the Defendants' "standing referral arrangement" (*id.* ¶ 120(e)) and Interpath's automated billing system that sends patient accounts to collections (*id.* ¶ 120(f)). Referring laboratory services to Interpath is lawful. The latter allegation concerns only Interpath's billing system, not Praxis's. It is unreasonable to draw the inference, from those facts, that Praxis agreed with Interpath to accomplish an unlawful objective or employ unlawful means.

The remaining factual allegations fail to thread that needle. Plaintiff attempts to paint a broader "scheme" between Defendants by citing the screenshotted Better Business Bureau complaints (*see id.* ¶ 120(g)), but Praxis is not named in any of the screenshots (*see id.* ¶ 39). So Mr. Anderson is left only with his anecdote that his unpaid balance was sent to collections after Praxis allegedly promised to contact Interpath about Plaintiff's bill, and Interpath said they never did. (*Id.* ¶ 120(f).) That allegation may describe a breakdown in communication, but it does not plausibly establish a preceding agreement to systematically disregard patients' billing disputes in furtherance of collection. *See Twombly*, 550 U.S. at 556-57 (in the antitrust context, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

Count 8 asks the Court to infer that because Praxis and Interpath are commonly owned and maintain a referral agreement, they must have conspired to violate IPACT and ICPA. *Twombly* does not permit such an inferential leap. Count 8 should be dismissed for failure to state a claim.

### C. The First Amended Complaint Fails to State a Claim for Joint Venture/Joint Enterprise Liability (Count 9).

In addition to the reasons stated in Part IV(A), Count 9 warrants dismissal for two additional reasons. First, Count 9 must be dismissed to the extent it purports to plead joint

*enterprise* liability because it does not plead the elements of a joint enterprise. Though titled as a claim for "Joint Venture/Joint Enterprise Liability", Count 9 alleges only the five elements to create a joint *venture*. *Compare* (Dkt. 43 ¶¶ 125-132), *with Rhodes*, 742 P.2d at 420-21 (reciting elements for joint venture). Joint enterprise liability is a distinct doctrine. *See Easter v. McNabb*, 541 P.2d 604, 605-06 (Idaho 1975). Most notably, a joint enterprise requires allegations that the participants possessed an equal right to direct and control the enterprise. *Id.* at 606. Count 9 contains no such allegation. (*See* Dkt. 43 ¶¶ 125-132.) Because Count 9 ignores the elements of a joint enterprise, the Court should dismiss it to the extent it relies on that theory.

Count 9 also fails on the theory it actually attempts to plead: joint venture liability. A joint venture is "an association of two or more persons to carry out a single business enterprise with the objective of realizing a profit." *Rhodes*, 742 P.2d at 421. Idaho law requires five elements to establish a joint venture:

> (1) a contribution by the parties of money, property, effort, knowledge, skill, or other assets to a common undertaking;
> (2) a joint property interest in the subject matter of the venture and a right of mutual control or management of the enterprise;
> (3) expectation of profits, or the presence of a venture;
> (4) a right to participate in the profits; and
> (5) a limitation of the objective to a single undertaking or ad hoc enterprise.

*Id.* at 420-21 (citing 46 Am. Jur. 2d Joint Ventures § 7). Assuming a joint venture exists, the acts of one joint venturer undertaken within the scope of the venture are attributable to all joint venturers. *Id.* at 422; *McCluskey Commissary, Inc. v. Sullivan*, 524 P.2d 1063, 1065 (Idaho 1974).

Count 9 alleges that "Praxis and Interpath are engaged in a joint venture for the integrated provision and billing of medical services to patients in Idaho, Oregon, and Washington." (Dkt. 43 ¶ 128.) Here again, Plaintiff has repackaged an ordinary business relationship between affiliated

entities into something it is not—a joint venture. His theory falls apart upon examination of the factual allegations supporting the claim.

For example, Count 9 fails to plausibly allege the second element, which requires both "a joint property interest in the subject matter of the venture" and "a right of mutual control or management of the enterprise." *Rhodes*, 742 P.2d at 420-21; (*see* Dkt. 43 ¶ 128(b)). Plaintiff does not identify any "joint property interest" that Praxis or Interpath own in connection with the alleged venture. (*See* Dkt. 43 ¶ 128(b).) Plaintiff skips this component and alleges that Praxis and Interpath "are commonly owned" and "share common managers, directors, and administrative systems, and operate from a common headquarters"—apparently to establish a "right of mutual control." (*Id.*) Common ownership or management between entities does not automatically equate to the right to control one another, nor does it establish a mutual right to control or manage the alleged *venture*. *See City of Escondido v. Gen. Reinsurance Corp.*, No. 19CV868-MMA (BGS), 2019 WL 6917983, at *8 (S.D. Cal. Dec. 18, 2019) ("[An] overlap in directors does not constitute facts showing that both [parties] controlled *the venture*" (emphasis in original)). If the alleged venture is the "integrated provision and billing of medical services" (Dkt. 43 ¶ 128), Plaintiff never alleges that Interpath had authority to direct how Praxis provided medical care, or that Praxis had the power to direct how Interpath billed patients. To the contrary, the First Amended Complaint says that Interpath could not adjust a charge without Praxis's input, and Praxis could not independently alter the contents of Interpath's bill. (*See id.* ¶¶ 26-28.)

Count 9 also fails to plead facts supporting the third and fourth elements of a joint venture: an expectation of profits from the venture itself and a right to participate in those profits. *Rhodes*, 742 P.2d at 420-21. These requirements demand more than allegations that two entities benefit from a business referral relationship. As one court explained, "it is not enough for the parties to

receive positive benefits and profits that might flow indirectly from a business arrangement—true joint venturers must agree to share in the actual profits and losses *of the joint venture itself*." *Balboa Cap. Corp. v. Shaya Med. P.C. Inc.*, No. SACV2100831CJCJDEX, 2021 WL 6104014, at *2-4 (C.D. Cal. Aug. 13, 2021) (emphasis added) (citation omitted). Otherwise, any two entities engaged in a mutually beneficial business relationship could be viewed as joint venturers. *Id.*

That is precisely what Plaintiff pleads here. Count 9 alleges that Praxis and Interpath "expect to derive profit from the integrated arrangement, including through cross-referrals, integrated billing, shared administrative cost-spreading, and collection revenue[.]" (Dkt. 43 ¶ 128(c).) Those allegations describe the positive benefits and revenues that could separately flow to the participants in a business referral arrangement. They do not establish that the venture (here, "the integrated provision and billing of medical services to patients") is generating profits to which Interpath and Praxis are equally entitled. Further, Plaintiff's allegation that Praxis and Interpath "participate . . . in the revenues generated by the integrated arrangement" through "the Adaugeo ownership structure and shared management" is conclusory. (*Id.* ¶ 128(d).) That two entities share management and ownership does not mean that they also share in the other entity's profits. Thus, Count 9 should be dismissed for the additional reason that it fails to demonstrate that Defendants had an expectation or right to participate in the profits of this "joint venture."

### D. The First Amended Complaint Fails to State a Claim for Concert of Action/Aiding and Abetting (Count 10).

Count 10 alleges that Praxis "substantially assisted" Interpath's alleged misconduct and therefore seeks to impose joint and several liability on Praxis. In addition to the reasons stated in Part IV(A), Count 10 must be dismissed because it fails to adequately plead to the standard for joint and several liability under Idaho law.

Until 1987, Idaho followed the common law rule of joint and several liability, under which two or more tortfeasors who caused a single, indivisible injury could each be held liable for the full amount of the plaintiff's damages, regardless of their respective degrees of fault. *See Tucker v. Union Oil Co. of California*, 603 P.2d 156, 166 (Idaho 1979), *abrogated by Runcorn v. Shearer Lumber Prods., Inc.*, 690 P.2d 324 (Idaho 1984). Under this regime, Idaho courts seemingly followed section 876 of the Restatement (Second) of Torts, which recognized three circumstances under joint and several liability could be imposed:

> (a) [The defendant] does a tortious act in concert with the other [tortfeasor] or pursuant to a common design with him, or
> (b) [The defendant] knows that the other[ tortfeasor]'s conduct constitutes a breach of duty and gives **substantial assistance or encouragement** to the other so to conduct himself, or
> (c) [The defendant] gives **substantial assistance** to the other [tortfeasor] in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (1979) (emphasis added).

As alluded to in the First Amended Complaint (*see* Dkt. 45 ¶ 135), in *Price v. Aztec Ltd., Inc.*, 701 P.2d 294, 298 (Idaho Ct. App. 1985) and *Smith v. Thompson*, 655 P.2d 116, 118 (Idaho Ct. App. 1982), the Idaho Court of Appeals imposed joint and several liability on a defendant who "substantially assisted" or encouraged another tortfeasor, consistent with subparagraph (b) in section 876 of the Restatement above.

*Price* and *Smith* predate the Idaho Legislature's tort reform in 1987. In 1987, Idaho Code section 6-803 was amended to substantially limit joint and several liability in the state of Idaho. *See* S.B. 1223, ch. 278, 1987 Idaho Sess. Laws § 4; *see also* H.B. 744, ch. 120, 1990 Idaho Sess. Laws § 1. Idaho Code section 6-803 provides in relevant part:

> (3) The common law doctrine of joint and several liability is hereby limited to causes of action listed in subsection (5) of this section. . .

> . . .
>
> (5) A party shall be jointly and severally liable for the fault of another person or entity or for payment of the proportionate share of another party where they were **acting in concert** or when a person was acting as an agent or servant of another party. As used in this section, **"acting in concert" means pursuing a common plan or design which results in the commission of an intentional or reckless tortious act.**

Idaho Code § 6-803(3), (5) (emphasis added).

The Idaho Legislature thus abrogated the "substantial assistance" theory applied in *Price* and *Smith* by limiting joint and several liability to the circumstances stated in subsection (5) of Idaho Code section 6-803. Subsection (5) adopts a narrower "concerted action" standard that only applies if the parties "pursu[e] a common plan or design which results in . . . an intentional or reckless act" and in *respondeat superior* situations.

In Count 10, Plaintiff does not allege that Praxis and Interpath acted pursuant to a common plan or design to commit an intentional or reckless tort. (*See* Dkt. 43 ¶¶ 133-140.) Instead, Plaintiff alleges that "Praxis is jointly and severally liable with Interpath" because "Praxis provided substantial assistance to Interpath's unlawful conduct" and that such assistance "was a substantial factor in the IPACT and ICPA violations suffered by Plaintiff and Class members." (*Id.* ¶¶ 137-139.) Because Idaho law does not authorize joint and several liability on a substantial assistance theory, Count 10 fails to state a claim and should be dismissed.

### E. The First Amended Complaint Fails to State an IPACT Claim Against Praxis (Counts 2, 4, and 6).

Counts 2, 4, and 6 in the First Amended Complaint fail to state a claim against Praxis under IPACT. These counts do not allege that Praxis itself violated any provision of the statute. Instead, they seek to hold Praxis liable for alleged IPACT violations committed by Interpath. As pleaded, the claims allege an agency relationship under which Interpath acted as Praxis's agent. But the Complaint alleges no facts that would plausibly support such a relationship.

Under Idaho law, an agency relationship arises when the principal manifests his assent that the agent shall act on his behalf and subject to his control, and the agent manifests his assent to so act. *Eagle Rock Timber, Inc. v. Teton Cnty.*, 531 P.3d 488, 494 (Idaho 2023). Once in an agency relationship, "the principal has a right to control the agent" and the principal can be held vicariously liable for agent's acts committed within the limited scope of the agency relationship. *Humphries v. Becker*, 366 P.3d 1088, 1095-96 (Idaho 2016).

The allegations here fall well short of that standard. Counts 2, 4, and 6 assert that Praxis violated IPACT by "authorizing" Interpath's conduct pleaded in the claims that immediately precede them. (Dkt. 43 ¶¶ 70-73, 80-84, 92-95.) For example, Plaintiff alleges that Praxis authorized Interpath to use invoices that omitted patients' telephone numbers (*id.* ¶ 72) and authorized Interpath to send accounts to collections without providing a "consolidated summary of services" first (*id.* ¶ 83). Those statements find no support in the Complaint's factual allegations. The Complaint does not allege that Interpath consented to Praxis controlling the design and contents of its patient invoices. It does not allege that Praxis controlled when Interpath sent patient accounts to collections. It only alleges that Praxis "authorized" each of these actions.

That is fatal under *Twombly*. A complaint must plead facts, not labels and conclusions. The bare allegation that Praxis "authorized" Interpath's conduct is exactly the sort of conclusory assertion that *Twombly* rejects. Plaintiff has failed to plead any facts that would show that Praxis was in an agency relationship with Interpath under which Praxis could control how and when Interpath billed patients. Thus, Counts 2, 4, and 6 must be dismissed.

## V. CONCLUSION

For the reasons above, Defendants respectfully request that the Court dismiss Counts 2, 4, 6, 8, 9, and 10 in the First Amended Complaint.

DATED: September 4, 2026

STOEL RIVES LLP

/s/ *Cory M. Carone*
Wendy J. Olson
Cory M. Carone
Tom R. Johnson, Jr.
Stephen H. Galloway

*Attorneys for Defendants*