Jaren Wieland, ISB No. 8265
Mooney Wieland Warren
512 W. Idaho St., Ste 103
Boise, ID 83702
t: 208.401.9219
jaren.wieland.service@mooneywieland.com

Aaron M. Zigler (Pro Hac Vice)
Nidya S. Gutierrez (Pro Hac Vice)
Lawrence V. Ashe (Pro Hac Vice)
Zigler Law Group, LLC
308 South Jefferson Street, Suite 333
Chicago, Illinois 60661
t: 312.535.5995
aaron@ziglerlawgroup.com
nidya@ziglerlawgroup.com
larry@ziglerlawgroup.com

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

NOLAN ANDERSON, on behalf of himself individually, and on behalf of all others similarly situated,

Plaintiff,

v.

INTERPATH LABORATORY, INC., an Oregon corporation, and PRAXIS HEALTH, P.C., an Oregon Professional Corporation,

Defendants.

Case No. 2:24-cv-00341-AKB

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**

**(Dkt. 47)**

## INTRODUCTION

Praxis Health, P.C. treated Nolan Anderson. Its clinic drew his blood, promised he would not pay for its technician's mistake, and then let the charge ride

through Interpath's automated billing system and into the hands of a debt collector. The Idaho Patient Act (IPACT) forbids exactly that. It bars any person from engaging, "directly or indirectly," in an extraordinary collection action before the patient receives the statutory notices, and it defines that action to include "authorizing any third party to collect the debt" in someone else's name. Idaho Code §§ 48-303(3)(a)(i), 48-304(1). Defendants move to dismiss, arguing that Counts II, IV, and VI "seek to hold Praxis liable for alleged IPACT violations committed by Interpath." Dkt. 47-1 at 16. They do not. Those counts hold Praxis liable for its own violations.[1]

Defendants get there by treating the statutory word "authorized" as a bare agency conclusion. But authorization is the very conduct IPACT prohibits, and the First Amended Complaint pleads the facts that make it plausible: Interpath billed in its own name for charges arising from Praxis's visit, including the blood draw Praxis performed, refused to adjust those charges without Praxis's sign-off, and sent the account to collections while Praxis sat on the only confirmation that could have stopped it. Those facts state a plausible IPACT claim against Praxis.

The remaining challenge—to Counts VIII, IX, and X—attacks a position Plaintiff does not hold. Plaintiff does not plead civil conspiracy, joint venture, or concerted action as freestanding torts. Each count expressly extends liability for the IPACT and ICPA violations pleaded in Counts I through VII, which is the role Idaho law assigns those doctrines. A heading does not change that function, and the

[1]Unless otherwise noted, all emphasis is added and citations and internal quotations omitted.

federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). The motion to dismiss should be denied.

## BACKGROUND

### I. The Court Sustained Plaintiff's IPACT and ICPA Claims.

Anderson sued in July 2024. He alleged that Interpath violated IPACT by sending his disputed account to collections without a final notice or consolidated summary of services and while his good-faith dispute remained open, and that Interpath and Praxis each engaged in deceptive practices under the Idaho Consumer Protection Act (ICPA). Dkt. 1 ¶¶ 51–52, 60–61. Defendants moved to dismiss both claims, and the Court denied the motion in full. It held that Anderson plausibly alleged "that no statutorily valid and operative final notice was provided before Defendants referred his account to a third-party collection agency," and that billing for services promised to be free, insisting on payment despite a known dispute, and invoking collections to pressure payment plausibly violate the ICPA. *Anderson v. Interpath Lab'y, Inc.*, No. 2:24-cv-00341-AKB, 2026 WL 177894, at *4 (D. Idaho Jan. 22, 2026). Discovery followed.

### II. The First Amended Complaint Adds What Discovery Revealed and Assigns Each Violation to the Defendant That Committed It.

The amendment does three things. None of them "repackage[s] the substance of his original two claims" or seeks to "manufacture the appearance of a larger case." Dkt. 47-1 at 3.

### A. Discovery Confirmed That the Violations Are Uniform and Software-Driven.

The First Amended Complaint adds a section pleading what Interpath has since admitted. Interpath "does not send its patients a consolidated summary of services" and has sent none "to any patient during the relevant period." Dkt. 43 ¶ 40. Its final notice omits the patient's telephone number "because Interpath's third-party billing software does not have that capability," and omits the statement that an itemized list is available on request—both required by Idaho Code § 48-303(4)(a)(i) and (iv). *Id.* ¶ 41. It referred 363,495 patient accounts to a third-party collector between January 1, 2020, and March 9, 2026; referral is automatic unless someone flags the account; and a flag blocks referral for only 60 days, "after which the account is sent to collections even if the patient's dispute remains unresolved." *Id.* ¶ 42. And although Interpath has known of IPACT since 2020, the only billing change it can identify is a 2024 shift in invoicing frequency "made to reduce mailing costs" and "not related to IPACT." *Id.* ¶ 43.

These admissions do not restate Anderson's "anecdote" or "[c]obbl[e] together" his experience with "screenshots of anonymous complaints." Dkt. 47-1 at 5, 11. They convert his experience into admitted, class-wide practice, and they supply the basis for Plaintiff's allegations that Defendants willfully violated IPACT. Dkt. 43 ¶¶ 67, 78, 89–90.

### B. The Amendment Separates the Claims by Defendant and by Statutory Duty.

The original Complaint pleaded one IPACT count, against Interpath, alleging that it violated IPACT in three ways: no final notice, no consolidated summary of services, and collection during a good-faith dispute. Dkt. 1 ¶¶ 51–52. It pleaded one ICPA count reaching the conduct of both Defendants. *Id.* ¶¶ 60–61. The First Amended Complaint breaks the IPACT claim into those three prerequisites—a compliant final notice, a consolidated summary of services, and the statutory waiting periods—and pleads each against Interpath (Counts I, III, and V) and, for the first time, against Praxis (Counts II, IV, and VI). Dkt. 43 ¶¶ 54–95. Count VII restates the ICPA claim against both Defendants and itemizes Praxis's own deceptive acts. *Id.* ¶ 110. Counts VIII through X plead the doctrines through which each Defendant answers for the other's violations. *Id.* ¶¶ 115–40. Count XI seeks a declaration on the "substantial compliance" defense Defendants raised in their amended answer. *Id.* ¶¶ 141–46.

The restructuring clarifies the specific duty each Defendant is charged with breaching. Defendants do not move against Counts I, III, V, VII, or XI. Praxis therefore remains a defendant on the ICPA claim however the Court resolves this motion.

### C. The Pleaded Facts Place Praxis at the Center of Anderson's Bill.

Praxis operates Prairie Family Medicine, the Coeur d'Alene clinic where Anderson received care. Dkt. 43 ¶¶ 4, 71. Interpath and Praxis share common

ownership through Adaugeo Healthcare Solutions, LLC, and the two share managers, directors, administrative systems, and a headquarters. *Id.* ¶¶ 3, 120(a)–(b). Praxis routinely directs its patients' specimens to Interpath, and Interpath routinely bills those patients directly "under the parties' established protocol." *Id.* ¶ 120(c)–(d).

On August 15, 2023, Anderson's Prairie provider drew his blood. *Id.* ¶ 23. Prairie then called him back for a second draw "due to technician error" and assured him he would not be charged for it. *Id.* Interpath's invoice charged him for both visits, including a "Draw Fee." *Id.* ¶ 24 & Ex. A. When Anderson disputed the charge, Interpath replied that any write-off required "a confirmation first from the provider or from Prairie Family Medicine." *Id.* ¶ 26. A Prairie representative twice agreed that Anderson should not have been charged and twice promised to contact Interpath. *Id.* ¶¶ 27, 30. As of January 4, 2024, Interpath still had not heard from Prairie. *Id.* ¶¶ 28, 34. Interpath marked its next invoice "FINAL NOTICE," warned that the account may have been sent to collections, and assigned it to Bonneville Collections, which demanded payment of "a debt that you owe to Interpath Laboratory." *Id.* ¶¶ 29, 31–32 & Ex. E. Interpath explained that its system "automatically forwards any balance on the account that remains unresolved or outstanding to a collection agency after 90 days from the received date from the insurance." *Id.* ¶ 34. Months later, Interpath reduced the second-draw fee—a correction "consistent with Plaintiff's position"—then sent a bill that dropped the correction and again demanded full payment. *Id.* ¶¶ 35–36. No consolidated

summary of services was ever issued, from Praxis or from anyone acting for it. *Id.* ¶ 82.

## LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion when its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

## ARGUMENT

### I. Counts II, IV, and VI Hold Praxis Liable for Praxis's Own Violations of IPACT.

Defendants' attack on the Praxis counts rests on one premise: that Plaintiff seeks "to hold Praxis liable for alleged IPACT violations committed by Interpath" through an agency theory. Dkt. 47-1 at 16. The premise is wrong. IPACT regulates Praxis directly, forbids it from engaging in unlawful collection "directly or indirectly," and makes authorizing a third-party collector the prohibited act. Measured against the statutory text, the Praxis counts state a claim.

### A. IPACT Imposes its Duties on Praxis as the Provider and the Facility Anderson Visited.

Defendants argue that Counts II, IV, and VI "do not allege that Praxis itself violated any provision of the statute." Dkt. 47-1 at 16. They do. IPACT governs both health care providers and health care facilities, and Praxis is both. A health care facility is any entity "operating a physical or virtual location that holds itself out to the public as providing health care services." Idaho Code § 48-303(5). A health care provider includes "[a] health care facility or its agent." *Id.* § 48-303(6)(b). Praxis operates Prairie, the facility Anderson visited, and "is the entity that provided goods and services to Plaintiff during his visit." Dkt. 43 ¶¶ 71, 81, 93. Defendants contest neither point.

"No person shall engage, directly or indirectly, in any extraordinary collection action against a patient" unless every prerequisite is met. Idaho Code § 48-304(1). One of those prerequisites is that the patient must receive a consolidated summary of services "from the health care facility that the patient visited." *Id.* § 48-304(1)(b). Praxis never sent one. Dkt. 43 ¶ 82. The duty is Praxis's alone: a facility may authorize another provider "by contract to provide the consolidated summary of services . . . on its behalf," Idaho Code § 48-310, but it cannot contract the obligation away, and Interpath admits it sends no summaries at all, Dkt. 43 ¶ 40. Nor can Praxis invoke the single-billing-entity exemption, which applies only when the patient receives a final notice from a single billing entity and the facility "otherwise complies with all other provisions of section 48-304." Idaho Code § 48-309(1), (3); *see* Dkt. 43 ¶¶ 41, 60, 83. The burden of proving compliance rests on

"[a]ny person seeking to engage in an extraordinary collection action," Idaho Code § 48-307, and liability attaches to "any party" that engages in an extraordinary collection action without complying, *id.* § 48-311.

The Idaho Supreme Court reads these provisions as written. Section 48-304 "prohibits a medical creditor from engaging in [third-party collection] unless it has first ensured compliance with the IPA's requirements." *Ridgeline Med., LLC v. Lyon*, 582 P.3d 498, 514 (Idaho 2026). The statute keys those duties to the patient's visit, not to who holds the account: an extraordinary collection action is any listed act "done in connection with a patient's debt," Idaho Code § 48-303(3)(a), and the facility's summary must list "each billing entity whose health care providers provided the services and goods to the patient," *id.* § 48-303(1)(a)(iv). The Legislature thus anticipated that a lab or other entity would bill separately for part of a visit, and it made the visited facility's summary a prerequisite to any collection on the visit's charges. And courts are "not at liberty to disregard the plain language of the IPA because it may work a hardship on" a provider. *DeKlotz v. NS Support, LLC*, 574 P.3d 328, 334 (Idaho 2025).

Count IV therefore requires no "agency"—only the indirect engagement shown in Part I.C. Section 48-311 reaches the party that takes an action "other than in accordance with section 48-304," and § 48-304 in turn forbids engaging in one "directly or indirectly." Read together, they reach Praxis: it owed Anderson a consolidated summary of services, never provided one, and let the debt from his visit proceed to collections anyway.

### B. Authorizing a Third-Party Collector is the Prohibited Conduct, Not a Legal Conclusion.

Defendants next argue that the allegation that Praxis "authorized" Interpath's conduct is "exactly the sort of conclusory assertion that *Twombly* rejects." Dkt. 47-1 at 17. It is not. The word comes from the statute. An extraordinary collection action includes, before sixty days pass after a valid final notice, "selling, transferring, or assigning any amount of a patient's debt to any third party, or otherwise authorizing any third party to collect the debt in a name other than the name of the health care provider." Idaho Code § 48-303(3)(a)(i). Authorizing a third party to collect is itself an extraordinary collection action, and § 48-304(1) forbids engaging in one "directly or indirectly." A provider that authorizes collection of its patient's visit charges through a chain that ends with a collection agency—here, Interpath and then Bonneville—before the prerequisites are met violates § 48-304(1) in its own right.

Defendants argue the FAC fails because it does not allege that Interpath consented to Praxis's control. Dkt. 47-1 at 17. But Plaintiff need not show that Interpath consented to "Praxis controlling the design and contents of its patient invoices," *id.*, because IPACT does not ask whether Interpath was Praxis's agent. It asks whether Praxis authorized a third party to collect its patient's debt, in a name other than its own, before the statutory prerequisites were met. *Eagle Rock Timber, Inc. v. Teton County*, 531 P.3d 488 (Idaho 2023), and *Humphries v. Becker*, 366 P.3d 1088 (Idaho 2016), describe when a principal answers vicariously for an agent's acts; they do not narrow a statute that expressly reaches indirect participation. And

even on Defendants' terms, "[w]here the existence of an agency relationship is disputed . . . it is a question for the trier of fact to resolve from the evidence." *Eagle Rock*, 531 P.3d at 494 (quoting *Bailey v. Ness*, 708 P.2d 900, 903 (Idaho 1985)). And the control that matters is control over the act at issue—here, whether a disputed charge proceeds to collections.

### C. The Pleaded Facts Make it Reasonable to Infer That Praxis Authorized the Collection of Anderson's Debt.

Defendants argue that the pleading "does not allege that Praxis controlled when Interpath sent patient accounts to collections" and "only alleges that Praxis 'authorized' each of these actions." Dkt. 47-1 at 17. That misreads the pleading. The question is whether the pleaded facts support a reasonable inference that Praxis authorized Interpath to bill and collect Anderson's debt. *Iqbal*, 556 U.S. at 678. Five sets of facts support that inference.

*First, the charges arose from Praxis's care.* Praxis's provider drew Anderson's blood, and Praxis's clinic called him back for the second draw its technician's error made necessary. Dkt. 43 ¶¶ 4, 23. Interpath then billed a "Draw Fee" for that clinic-performed service and later adjusted "the draw fee for the second draw." *Id.* ¶ 35 & Exs. A, F. A reasonable inference is that Interpath billed for a service performed by Praxis's staff at Praxis's clinic because Praxis authorized it.

*Second, the billing arrangement is standing and structural.* Interpath and Praxis share common ownership through Adaugeo. The two also share managers, directors, administrative systems, and a headquarters. Praxis directs its patients' specimens to Interpath "for testing and billing," and Interpath bills those patients

"under the parties' established protocol." *Id.* ¶¶ 3, 110(b), 120(a)–(d). An established protocol under which one entity bills and collects for another's patients is the kind of authorization IPACT describes.

*Third, Praxis held the only switch.* Interpath would not write off any charge without "a confirmation first from the provider or from Prairie Family Medicine." Dkt. 43 ¶ 26. Defendants acknowledge the allegation that "Interpath could not adjust a charge without Praxis's input," adding that "Praxis could not independently alter the contents of Interpath's bill." Dkt. 47-1 at 13. Praxis did not need to edit the bill. Its confirmation decided whether a disputed charge stayed on the account—and therefore whether it went to collections. That is control over the very act IPACT regulates. Defendants offer these facts to show the absence of mutual control. *Id.* They show the opposite.

*Fourth, Praxis knew how the pipeline worked and let it run.* Praxis knew the charge was disputed; it made the promise that created the dispute. Dkt. 43 ¶¶ 23, 27. It knew that Interpath's system forwards unresolved balances to collections automatically. *Id.* ¶¶ 110(b), 136(a). It twice promised to send the confirmation Interpath required and never did. *Id.* ¶¶ 27–28, 30, 34. And Interpath now admits that referral fires automatically unless an account is flagged, and that a flag holds for only 60 days. *Id.* ¶ 42. A principal that holds the only override, knows the default outcome, and stays silent has manifested its assent to that outcome. Whether an agent reasonably infers authority from a principal's silence or

acquiescence "is a question of fact." *Eagle Rock*, 531 P.3d at 499 (quoting Restatement (Third) of Agency § 2.02 cmt. f (Am. L. Inst. 2006)).

*Fifth, the collection happened in someone else's name.* Bonneville pursued Anderson for "a debt that you owe to Interpath Laboratory"—a name other than that of Praxis, the provider of the care. Dkt. 43 ¶¶ 32, 61 & Ex. E; *see* Idaho Code § 48-303(3)(a)(i).

Defendants offer a competing story: Anderson's experience "may describe a breakdown in communication," but not a preceding agreement. Dkt. 47-1 at 11. At most, that is an alternative explanation, and a plaintiff's complaint "may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is implausible." *Starr*, 652 F.3d at 1216. A single "breakdown" does not explain why Interpath needed Praxis's permission to fix its own bill, or why the same confirm-before-correct protocol governs Praxis patients generally. Dkt. 43 ¶¶ 110(c), 120(f). Nor is this *Twombly*'s parallel conduct by independent competitors, 550 U.S. at 556–57; it is two affiliated entities operating a single, integrated billing arrangement. The precise terms on which Praxis delegated billing and collection to Interpath sit in Defendants' files. Rule 8 requires only "enough fact to raise a reasonable expectation that discovery will reveal" them. *Twombly*, 550 U.S. at 556.

The same facts sustain Counts II and VI. Praxis engaged, at least indirectly, in an extraordinary collection action on a final notice that omitted required information, *see* Dkt. 43 ¶¶ 41, 72, and before the statutory waiting periods ran and

while Anderson's good-faith dispute remained unresolved, *see id.* ¶¶ 88, 94; Idaho Code § 48-304(1)(c)–(e).

## II. Counts VIII, IX, and X Extend Liability for the Statutory Violations; They Do Not Plead Independent Torts.

### A. Plaintiff Agrees These Doctrines Are Theories of Shared Liability, Which Is How the Amended Pleading Uses Them.

Defendants argue that Counts VIII, IX, and X "are not cognizable causes of action" because civil conspiracy, joint venture, and concerted action "address who may be liable for an existing claim; they do not create new claims themselves." Dkt. 47-1 at 7–8. Plaintiff agrees with the premise but Defendants' conclusion does not follow. The FAC ties each doctrine to the underlying statutory claims. Count VIII identifies the objects of the conspiracy as "violations of IPACT, violations of ICPA," and seeks the "statutory damages and penalties under IPACT and ICPA." Dkt. 43 ¶¶ 121, 124. Count IX alleges that "Praxis is liable as a joint venturer for Interpath's violations of IPACT and ICPA pleaded in Counts I, III, V and VII," and that Interpath is liable for Praxis's violations. *Id.* ¶ 130. Count X seeks to make Praxis answer for "the IPACT and ICPA violations suffered by Plaintiff and Class members." *Id.* ¶ 138. None seeks damages for the conspiracy, the venture, or the assistance itself.

Idaho law uses these doctrines in exactly this way. "The essence of a cause of action for civil conspiracy is the civil wrong committed as the objective of the conspiracy, not the conspiracy itself." *McPheters v. Maile*, 64 P.3d 317, 321 (Idaho 2003). Where a joint venture exists, "each of the parties is the agent of the others

and each is likewise a princip[al] of the others so that the act of one is the act of all." *Rhodes v. Sunshine Mining Co.*, 742 P.2d 417, 422 (Idaho 1987) (quoting *Connor v. El Paso Nat. Gas Co.*, 599 P.2d 247, 249 (Ariz. Ct. App. 1979)). And Idaho's joint-and-several-liability statute expressly preserves shared liability for parties "acting in concert" or in an agency relationship. Idaho Code § 6-803(5). Courts in this District apply these doctrines to extend liability for statutory violations, not to invent new torts. *See Moonlight Mountain Recovery, Inc. v. McCoy*, No. 1:24-cv-00012-BLW, 2025 WL 371020, at *5 (D. Idaho Feb. 3, 2025) (denying dismissal where defendant "can be held liable for the acts of his co-conspirators," including federal statutory violations); *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1199 (D. Idaho 2013) ("[A]ll members of a conspiracy are jointly and severally liable for the acts of their co-conspirators . . . ."). Defendants' attack on the lineage of these decisions, Dkt. 47-1 at 8–9 & n.2, goes to whether aiding and abetting is a "claim." It does not matter here, because Plaintiff invokes each doctrine only as a path to liability.

Defendants cite Idaho decisions dismissing conspiracy counts. Dkt. 47-1 at 7–8. But those authorities do not reach this pleading. *McPheters*, decided on summary judgment, held that the proper claim there sounded in negligence. 64 P.3d at 321. *Boren* turned on the plaintiff's concession. *Boren v. Gadwa*, 578 P.3d 861, 877 (Idaho 2024). Neither dismissed a derivative theory tied to a surviving statutory claim. Here, the underlying IPACT and ICPA claims have already survived one motion to dismiss, and Defendants do not challenge them now as to Interpath.

Defendants ask the Court to dismiss these counts "with prejudice." Dkt. 47 at 2. The federal rules govern form, and they do not permit dismissal over a heading. "[A] complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011). A plaintiff may plead alternative and even inconsistent theories. Fed. R. Civ. P. 8(d)(2)–(3). The correct result is not dismissal, much less dismissal with prejudice. It is recognition that Counts VIII through X plead theories of liability for the violations alleged in Counts I through VII. Plaintiff stipulates to that construction and, if the Court prefers, will fold these theories into the substantive counts by conforming amendment.

**B. The Pleaded Facts Support Each Theory.**

*Conspiracy*. Defendants argue that the pleading shows, "[a]t most," a "lawful patient referral agreement," and that common ownership and shared offices "are ordinary features of affiliated businesses." Dkt. 47-1 at 10. But Defendants acknowledge that an agreement "may be inferred from the parties' conduct," *id.*, and the pleading alleges far more than common ownership. It alleges a closed-loop protocol under which Interpath refuses to correct disputed charges without Praxis's confirmation while Praxis "systematically fails to provide such confirmation," with the "foreseeable and intended result that disputed charges proceed to extraordinary collection action regardless of the dispute." Dkt. 43 ¶ 110(c); *see id.* ¶ 120(c)–(f). The objective is unlawful by Interpath's own admissions: its software cannot produce a compliant final notice, it never sends a consolidated summary, and its referral engine ignores unresolved disputes. *Id.* ¶¶ 40–42. Because Praxis owes IPACT

duties itself, *see* Part I.A, it is "legally capable of committing the tort." *Moonlight*, 2025 WL 371020, at *6 (quoting *Tricore Invs., LLC v. Est. of Warren*, 485 P.3d 92, 121 (Idaho 2021)).

*Joint venture.* Defendants argue that Count IX fails to plead a joint property interest, mutual control, or shared profits, and that "[c]ommon ownership or management between entities does not automatically equate to the right to control one another." Dkt. 47-1 at 12–14. Whether a joint venture exists "is primarily a question of fact . . . to determine from the facts and the inferences to be drawn therefrom," and it "may be implied, in whole or in part, from the conduct of the parties." *Rhodes*, 742 P.2d at 421. Defendants' principal objection—that Praxis handles clinical care while Interpath handles lab work and billing, Dkt. 47-1 at 13—is one *Rhodes* rejects: control "need not be shared equally between members of a joint venture, but can be delegated to one member of the group." 742 P.2d at 422 (quoting *House v. Mine Safety Appliances Co.*, 573 F.2d 609, 620 (9th Cir. 1978)). The pleading alleges each party's contributions, jointly used property in the shared administrative systems and billing infrastructure, shared control through common ownership and management, and profits from cross-referrals, integrated billing, and collection revenue flowing through the Adaugeo structure. Dkt. 43 ¶ 128(a)–(d). Those are facts, not labels, and whether the revenues are venture profits is a question the pleaded facts make plausible. Defendants also argue that Count IX omits the "equal right to direct and control" a joint enterprise requires. Dkt. 47-1 at

12 (emphasis omitted). Plaintiff proceeds on joint venture and does not oppose striking the "joint enterprise" label, which adds nothing.

*Concerted action.* Defendants argue that the Legislature's 1987 amendment to Idaho Code § 6-803 "abrogated the 'substantial assistance' theory applied in *Price* and *Smith*." Dkt. 47-1 at 16. That argument conflates liability with apportionment. Section 6-803(3) limits "[t]he common law doctrine of joint and several liability"; it does not abolish the liability of one who knowingly and substantially assists a wrong. *See Moonlight*, 2025 WL 371020, at *4 (recognizing aiding-and-abetting liability under Idaho law and stating its elements). Section 6-803(5), moreover, preserves joint and several liability where parties pursue "a common plan or design which results in the commission of an intentional or reckless tortious act," and the pleading alleges a common design with an "intended result" and knowing participation. Dkt. 43 ¶¶ 110(c), 120(f), 136–37. An IPACT violation is a statutory wrong, and § 48-311(3) itself singles out "willfully or knowingly" violations—the intentional conduct § 6-803(5) contemplates. In all events, Praxis's liability for its own indirect collection action arises under § 48-311 and needs no joint-and-several doctrine. The extent to which Praxis also answers for Interpath's share is a remedies question, not a basis for dismissal.

At bottom, Defendants' challenge to Counts VIII through X is a dispute over formatting. Defendants concede that these theories may support liability; their objection is that "those allegations belong within the substantive causes of action themselves." Dkt. 47-1 at 9. Moving the same allegations from Counts VIII through

X into Counts I through VII would change where they appear, not what they establish. The Federal Rules do not demand that exercise: "[a]lthough it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it." *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992). And Rule 12(b)(6) "doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Relocating a theory is no ground for dismissal, let alone dismissal with prejudice.

## III. Defendants Bypassed the Court's Conferral Requirement, and Any Deficiency Warrants Leave to Amend.

Defendants concede they did not confer before filing, reasoning that the motion "primarily challenges the legal viability of several claims, not merely the sufficiency of the facts alleged to support them." Dkt. 47 at 2 n.1. The concession matters because this Court "expects that counsel, prior to filing a motion to dismiss based upon *Iqbal-Twombley*, will contact opposing counsel, advise them of the perceived shortcomings in the allegations of the complaint, and attempt to reach agreement for the filing of an amended complaint." Chief Judge Amanda K. Brailsford, *Motion Practice*, U.S. Dist. Ct. for the Dist. of Idaho (last visited Sept. 25, 2026). And Defendants' justification does not hold. It is not true of the Praxis counts, which Defendants attack as a "threadbare assertion" unsupported by facts, Dkt. 47-1 at 7, or of their element-by-element attacks on Counts VIII through X.

Those are pleading-sufficiency arguments of exactly the kind the Court's practice is designed to resolve without motion practice.

If the Court finds any count deficient, the remedy is leave to amend. Leave is granted "with extreme liberality," and "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). Nothing suggests futility here. Discovery into the Praxis–Interpath billing and referral arrangement is ongoing, and, in the Court's own words, such motions "are almost always resolved by granting the offending party an opportunity to amend their pleadings." *Motion Practice*, *supra*.

## CONCLUSION

The Court should deny Defendants' Motion to Dismiss (Dkt. 47). Alternatively, the Court should construe Counts VIII through X as theories of liability for the violations alleged in Counts I through VII, or grant Plaintiff leave to amend any count it finds deficient.

DATED: September 25, 2026

Respectfully submitted,

/s/ Jaren Wieland
Jaren Wieland, ISB No. 8265
Mooney Wieland Warren

Aaron M. Zigler (*Pro Hac Vice*)
Nidya S. Gutierrez (*Pro Hac Vice*)
Lawrence V. Ashe (*Pro Hac Vice*)
Zigler Law Group, LLC

*Counsel for Plaintiff and Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2026, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected in the Notice of Electronic Filing:

Stoel Rives LLP
Wendy J. Olson
Wendy.olson@stoel.com
Thomas R. Johnson
Tom.johnson@stoel.com
Stephen Galloway
Stephen.galloway@stoel.com
Cory Michael Carone
Cory.carone@stoel.com

*Attorneys for Defendants*

Jaren Wieland
Jaren Wieland
Attorney for Plaintiff