WENDY J. OLSON, Bar No. 7634
wendy.olson@stoel.com
CORY M. CARONE, Bar No. 11422
cory.carone@stoel.com
STOEL RIVES LLP
101 S. Capitol Boulevard, Suite 1900
Boise, ID 83702
Telephone: 208.389.9000
Facsimile: 208.389.9040

TOM R. JOHNSON, JR. (*Pro Hac Vice*)
tom.johnson@stoel.com
STEPHEN H. GALLOWAY (*Pro Hac Vice*)
stephen.galloway@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

NOLAN ANDERSON, on behalf of himself individually, and on behalf of all others similarly situated,

Plaintiff,

v.

INTERPATH LABORATORY, INC., an Oregon corporation, and PRAXIS HEALTH, P.C., an Oregon Professional Corporation,

Defendants.

Case No. 2:24-cv-00341-AKB

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT [DKT. 47]**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1
II. REPLY .......... 1
A. Civil Conspiracy, Joint Venture Liability, and "Aiding and Abetting" (Counts 8-10) Are Not Causes of Action. .......... 1
B. Count 8 Fails to State a Claim for Civil Conspiracy. .......... 2
C. Count 9 Fails to State a Claim for Joint Venture Liability. .......... 4
D. Count 10 Fails to State a Claim for Aiding and Abetting. .......... 5
E. Counts 2, 4, and 6 Fail to State an IPACT Violation Claim Against Praxis. .......... 6
III. CONCLUSION .......... 10

## I. INTRODUCTION

Plaintiff's opposition largely confirms the deficiencies identified in the Defendants' motion to dismiss. He concedes that Counts 8, 9, and 10 can be "fold[ed]" into his substantive claims, confirming they are not independent causes of action. (*See* Dkt. 48 at 16.) Further, Plaintiff offers no facts sufficient to support those theories. Nor does he cure the defects in Counts 2, 4, and 6, which seek to hold Praxis liable for alleged IPACT[1] violations allegedly committed by Interpath based on little more than the conclusory allegation that Praxis "authorized" the conduct. The Court should grant Defendants' motion to dismiss in full.

## II. REPLY

### A. Civil Conspiracy, Joint Venture Liability, and "Aiding and Abetting" (Counts 8-10) Are Not Causes of Action.

The Court must dismiss Counts 8, 9, and 10 because civil conspiracy, joint venture, and "aiding and abetting" are not causes of action. (*See* Dkt. 47-1 at 7-9.) They are theories of shared liability that can be pleaded, if anywhere, within the substantive claim from which they arise, but a plaintiff cannot plead "civil conspiracy" as a standalone claim. As explained in Defendants' opening memorandum, Idaho law has rejected that proposition for more than a century. (*See id.* at 8 (citing cases).)

Unable to reconcile Counts 8, 9, and 10 with that weight of authority, Plaintiff sidesteps the issue, reiterating that Idaho courts accept these theories "to extend liability for statutory violations" and therefore they can be pleaded "as a path to liability" on Plaintiff's substantive claims. (*See* Dkt. 48 at 14-15.) But that does not address the problem. The unanswered question is why Plaintiff can plead those theories as causes of action when the very authorities he cites say

---

[1] Capitalized terms not defined herein have the meanings assigned in the opening memorandum.

that he cannot. (*See, e.g.*, *id.* at 14 (citing *McPheters v. Maile*, 64 P.3d 317, 321 (Idaho 2003)).) Plaintiff never answers that question. (*See id.* at 14-15.) Counts 8-10 plead shared liability theories and not claims for relief, and Plaintiff's continued effort to blur that distinction is contrary to law.[2]

Whether these theories may be pleaded as separate claims is not merely "a dispute over formatting." (*Id.* at 18.) It is a matter of prejudice. The Federal Rules permit alternative *claims* for relief, Fed. R. Civ. P. 8(d)(2)-(3), but they do not permit plaintiffs to inflate the size and seriousness of a case by pleading additional counts that are not claims for relief at all. By padding his complaint with three additional "claims" that are not actually claims, Plaintiff creates a substantial risk of influencing a jury with the sheer number and labels of the counts asserted. *See ReRoof Am., Inc. v. United Stuctures of Am., Inc.*, 215 F.3d 1351 (Fed. Cir. 1999) (unpublished table decision). That risk is particularly strong here, where the names of two of those claims ("conspiracy" and "aiding-and-abetting") carry criminal overtones despite not imposing any independent liability.

In the end, Plaintiff all but acknowledges his error by offering to "fold these theories into the substantive counts" in an amended pleading. (Dkt. 48 at 16.) That concession confirms that dismissal is appropriate. The Court should dismiss Counts 8, 9, and 10 for failure to state a claim.

**B. Count 8 Fails to State a Claim for Civil Conspiracy.**

Even if civil conspiracy qualified as a cause of action (and it does not), Count 8 would still fail. Plaintiff has not alleged facts from which the Court could plausibly infer that Praxis and

---

[2] Plaintiff's reliance on *McPheters v. Maile* illustrates the point. (*See* Dkt. 48 at 15.) Plaintiff attempts to distinguish *McPheters* because it arose from summary judgment, but *McPheters* did not reject the conspiracy claim for lack of evidence. It rejected the claim because "[c]ivil conspiracy is not, by itself, a claim for relief" and, "[t]herefore, McPheters' civil conspiracy claim fails as a matter of law." 64 P.3d at 321. Plaintiff further observes that *McPheters* "held that the proper claim there sounded in negligence." (Dkt. 48 at 15.) That is precisely the point that Plaintiff conveniently overlooks. Just as negligence, rather than conspiracy, supplied the actionable claim in *McPheters*, Plaintiff's statutory claim, rather than his conspiracy claim, supplies the actionable claim here.

Interpath entered into "an agreement . . . to accomplish an unlawful objective or to accomplish a lawful objective in an unlawful manner." *McPheters*, 64 P.3d at 321.

The First Amended Complaint alleges that Praxis and Interpath share common ownership and maintain a referral relationship. (Dkt. 43 ¶ 3.) It alleges that Interpath's billing software cannot generate IPACT-compliant notices and automatically sends patient accounts to collections at intervals that violate IPACT. (*Id.* ¶¶ 41-42.) It recounts Plaintiff's experience disputing his bill with Praxis and Interpath. (*Id.* ¶¶ 24-36.) And it attaches a series of Better Business Bureau complaints involving Interpath and other health care providers. (*Id.* ¶ 39.) From those allegations, Plaintiff asks the Court to infer not only that Praxis patients broadly experience the same alleged communication failures that Plaintiff experienced, but further that Praxis and Interpath *agreed to create those failures* as part of a scheme to violate IPACT and the ICPA.

That inferential leap is far too great. The allegations concerning the billing software and automatic collections intervals all concern Interpath's conduct, not Praxis's. (*Id.* ¶¶ 41-42.) And Praxis's name does not appear anywhere in the Better Business Bureau complaints. (*Id.* ¶ 39.) Stripped of its conclusory labels and characterizations, Plaintiff's conspiracy claim rests on little more than a referral relationship between affiliated entities and Plaintiff's singular billing dispute. That is a thin factual foundation from which to infer a coordinated agreement to violate Idaho law. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (plausibility requires "more than labels and conclusions"); *id.* at 556-57 (in the antitrust context, "parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality").

Plaintiff's opposition attempts to bridge that gap by citing to the portions of Count 8 which simply spin up that same thin factual foundation with his own characterizations. (*See* Dkt. 48 at

16-17.) Alleging that "Praxis '***systematically*** fails to provide such confirmation'" to patients does not conjure new factual allegations showing that Praxis indeed engaged in conduct that was systematic. (*Id.* at 16 (emphasis added).) Referring to Plaintiff's experience as a "closed-loop ***protocol***" between Interpath and Praxis does not create the factual allegations proving that Plaintiff's singular experience was, indeed, "protocol" between Interpath and Praxis. (*Id.* (emphasis added); Dkt. 43 ¶ 120.) And asserting that Defendants' "scheme operates ***uniformly*** across Praxis-Interpath patient interactions" does not make it uniform, particularly because Plaintiff supports that characterization with the Better Business Bureau complaints that do not even identify Praxis. (Dkt. 43 ¶¶ 120(g), 39.) Conclusory characterizations of facts do not replace what facts are actually alleged in the complaint. *See Devore v. U.S. Dep't of Def.*, No. CV 20-00563-ODW (PD), 2020 WL 8413527, at *2 (C.D. Cal. Oct. 27, 2020) (dismissing claim relying on conspiracy theory supported by "[c]onclusory statements without factual specificity").

The Court cannot plausibly infer that Interpath and Praxis were engaged in a coordinated agreement to violate Idaho law from the facts alleged. For this additional reason, Count 8 should be dismissed.

**C. Count 9 Fails to State a Claim for Joint Venture Liability.**

Count 9 (joint venture liability) likewise fails because Plaintiff mistakes an ordinary business relationship between affiliated entities for a joint venture. (Dkt. 47-1 at 11-14.) To begin, Plaintiff's opposition makes no attempt to cure his failure to identify any "joint property interest in the subject matter of the venture" in the First Amended Complaint. *Rhodes v. Sunshine Mining Co.*, 742 P.2d 417, 421 (Idaho 1987); (Dkt. 48 at 17.) And Plaintiff does not dispute that he failed to allege a "right of mutual control or management of the enterprise." *Rhodes*, 742 P.2d at 421; (*see* Dkt. 48 at 17.) Instead, Plaintiff observes that joint venturers may "delegate[]" their control

to one another. (Dkt. 48 at 17 (quoting *Rhodes*, 742 P.2d at 422).) Yet delegation presupposes the existence of a right to control in the first place. If the alleged joint venture here is "the integrated provision and billing of medical services to patients" (Dkt. 43 ¶ 128), then Plaintiff must allege that Interpath had the right to control how Praxis provided medical services to its patients, and delegated that right to Praxis. Wisely, the First Amended Complaint does not make that untenable allegation. In any event, Plaintiff has not alleged a "joint property interest" or a "mutual right of control" necessary to plead the claim.

The First Amended Complaint also confuses common ownership with a right to share in venture profits. (*See id.* ¶ 128(d) ("Through the Adaugeo ownership structure and shared management, [Interpath and Praxis] participate—directly or indirectly—in the revenues generated by the integrated arrangement.").) An overlap in ownership does not equate to a right to participate in the profits generated by another entity. Speculating that this common ownership relationship is the exception does not surpass the plausibility standard.

Ultimately, Plaintiff's defense of Count 9 is notable more for what it does *not* say than what it does. Rather than identifying allegations establishing all five elements of a joint venture, Plaintiff retreats to the general proposition that the existence of a joint venture poses a question of fact. (Dkt. 48 at 17.) Factual questions arise only after a joint venture has been plausibly alleged. Plaintiff has not done so here. For this additional reason, Count 9 warrants dismissal.

**D. Count 10 Fails to State a Claim for Aiding and Abetting.**

Count 10 (alleging "aiding and abetting") also fails for the additional reason that it is pleaded to a standard Idaho law no longer recognizes. Count 10 seeks to impose joint and several liability on Praxis on the premise that Praxis allegedly "provided substantial assistance to Interpath's unlawful conduct." (Dkt. 43 ¶ 137.) But as Defendants explained in their opening brief,

Idaho's 1987 tort-reform amendments displaced the "substantial assistance" standard and replaced it with the narrower rule codified in Idaho Code § 6-803(5). (*See* Dkt. 47-1 at 14-16.) Under that statute, joint and several liability exists only where parties were acting as principal and agent or were "acting in concert," meaning they pursued a common plan or design resulting in an intentional or reckless tortious act. Idaho Code § 6-803(5). Plaintiff did not plead that standard. He pleaded substantial assistance. Count 10 therefore fails on its face.

Plaintiff's response does not cure that defect. He argues that Defendants "conflate[] liability with apportionment" and cites to *Moonlight Mountain Recovery, Inc. v. McCoy*, No. 1:24-CV-00012-BLW, 2025 WL 371020 (D. Idaho Feb. 3, 2025), as recognizing aiding-and-abetting liability under Idaho law. (Dkt. 48 at 18.) Yet Defendants' argument is not about how fault should ultimately be apportioned; it is that Count 10 affirmatively seeks to impose joint and several liability based on a theory Idaho law no longer recognizes. Nor does *Moonlight* help Plaintiff for the reasons already explained in Defendants' opening memorandum. (*See* Dkt. 47-1 at 8-9 & n.2.) More fundamentally, Count 10 still pleads only that Praxis "substantially assisted" Interpath. It does not plausibly allege that Interpath *and Praxis* were acting pursuant to a common plan or design to commit an intentional or reckless act, as § 6-803(5) requires. Because Count 10 is pleaded to the wrong legal standard and lacks factual allegations satisfying the standard that Idaho law actually applies, it should be dismissed.

**E. Counts 2, 4, and 6 Fail to State an IPACT Violation Claim Against Praxis.**

Finally, Counts 2, 4, and 6 fail to state an IPACT claim against Praxis. Plaintiff has pleaded three IPACT claims against *Interpath* based on Interpath's billing statements and collection efforts (Counts 1, 3, and 5). (Dkt. 43 ¶¶ 55-69, 74-79, 85-91.) Counts 2, 4, and 6 merely repackage those

claims and allege them against *Praxis* on the unsupported premise that Praxis "authorized" Interpath's conduct in each instance. (*See id.* ¶¶ 70-73, 80-84, 92-95.)

To illustrate, Count 1 asserts that none of Interpath's billing statements qualify as "final notice[s] before extraordinary collection action" ("Final Notices") under IPACT because they omit "the patient's telephone number" and "the statement that a full itemized list of goods and services is available upon request." (*Id.* ¶ 60 (citing Idaho Code § 48-303(4)(a)(i), (iv)).) Thus, Count 1 alleges that "Interpath engaged in an extraordinary collection action" violative of IPACT because Interpath "assigned [Plaintiff's debt] to Bonneville Collections" "less than 60 days from Plaintiff receiving" a compliant Final Notice. (*Id.* ¶¶ 61, 62.)

Count 2 duplicates Count 1 while substituting Praxis for Interpath. It states, without any factual foundation, that "Praxis ***authorized Interpath***, directly or indirectly, to bill and to pursue collection on [Plaintiff's] debt . . . using a final notice that omits the patient's telephone number and the statement that an itemized list is available upon request[.]" (*Id.* ¶ 72 (emphasis added).)

In Count 3, Plaintiff alleges that Interpath never sent Plaintiff a "consolidated summary of services," which is one of the conditions that must be satisfied prior to engaging in an extraordinary collection action. (*Id.* ¶ 76; *see* Idaho Code § 48-304(1)(a)-(e).) Thus, Count 3 alleges that Interpath violated IPACT by taking an "extraordinary collection action against Plaintiff" without "provid[ing] a consolidated summary of services before." (Dkt. 43 ¶ 77.) Count 4, in turn, summarily states that Praxis also violated IPACT because "Praxis ***authorized Interpath***, directly or indirectly, to take extraordinary collection action on [Plaintiff's] debt . . . without first providing a consolidated summary of services." (*Id.* ¶ 83 (emphasis added).)

Count 5 asserts that "Interpath assigned Plaintiff's account to Bonneville Collections on or before December 19, 2023 . . . while his good-faith dispute remained unresolved, before the

required periods ran, and without any valid final notice or consolidated summary of services having issued." (*Id.* ¶¶ 87, 88.) Count 6 alleges the same facts against Praxis and summarily states that "***Praxis authorized the assignment of Plaintiff's account*** . . . to a third-party collection agency, directly or indirectly, . . . while good-faith disputes remained unresolved and before the notices and waiting periods IPACT requires." (*Id.* ¶ 94 (emphasis added).)

The problem with Counts 2, 4, and 6 is that they are not supported by facts showing that Praxis actually authorized any one of these actions. The complaint alleges that Interpath regularly worked with and provided laboratory testing for Praxis's clinics (*id.* ¶ 3), and it recounts Plaintiff's communications with Praxis and Interpath about his bill (*id.* ¶¶ 24-36). But those allegations do not plausibly suggest that Praxis affirmatively authorized Interpath to use billing notices that omitted patients' phone numbers, or to refer Plaintiff's debt to collections in December 2023. (*See id.* ¶¶ 72, 83.) Plaintiff pleads no factual allegations regarding how, when, or by whom any such authorization was given. Instead, Plaintiff merely asserts that Praxis authorized these acts and invites the Court to accept that conclusion as fact. *Twombly* and *Iqbal* require more.

Plaintiff opposes dismissal of these claims on three grounds. First, Plaintiff alleges that Praxis is directly liable under IPACT because Praxis is "the health care facility that the patient visited" and therefore bore direct responsibility for issuing a consolidated summary of services under Idaho Code § 48-304(1)(b) but did not. (Dkt. 48 at 8-9.) That is not the claim that Plaintiff pleaded. Counts 2, 4, and 6 allege that Praxis violated IPACT because Praxis allegedly "authorized" Interpath to take some action. (Dkt. 43 ¶¶ 72, 83, 94.) They do not allege that Praxis violated IPACT for not sending a consolidated summary of services itself. (*See id.*) Thus, Plaintiff's first argument fails to demonstrate why the claims that he *did* plead should not be dismissed.

Second, Plaintiff alleges that Counts 2, 4, and 6 should survive because "[a]uthorizing a third party to collect is itself an extraordinary collection action, and § 48-304(1) forbids engaging in one 'directly or indirectly.'" (Dkt. 48 at 10.) Plaintiff cites to Idaho Code §§ 48-303(3)(a)(i) and 48-304(1) in support of this argument. (*See id.*) His argument unravels upon reviewing the actual statutory text. Idaho Code § 48-304(1) prohibits any "person" from "engag[ing], *directly or indirectly*, in any *extraordinary collection action* against a patient unless" certain conditions are met. (Emphases added.) In turn, Idaho Code § 48-303(3)(a)(i) defines an "extraordinary collection action" as follows:

> (3)(a) "Extraordinary collection action" means any of the following actions done in connection with a patient's debt:
> (i) **Prior to sixty (60) days from the patient's receipt of the final notice before extraordinary collection action**, selling, transferring, or assigning any amount of a patient's debt to any third party **or otherwise authorizing any third party to collect the debt in a name other than the name of the health care provider**[.]

(Emphases added.)

Plaintiff plucks the phrase "directly or indirectly" from § 48-304(1) and the phrase "or otherwise authorizing any third party to collect the debt" from § 48-303(3)(a)(i) to suggest that a health care provider commits an extraordinary collection action whenever it generally authorizes another health care entity to participate in the billing or collection process, and that authorization remains actionable if the third party later violates some other IPACT requirement. Not so.

Read in context, a health care provider engages in an "extraordinary collection action" under Idaho Code § 48-303(3)(a)(i) if it assigns a particular patient's unpaid balance to a debt collector before the 60-day period expires. The actionable conduct is the affirmative act of placing the debt with a third-party collector during the prohibited period. It does *not* cover, as Plaintiff suggests, *generally* authorizing another health care entity to bill for services, totally divorced from

the temporal component that precedes that phrase. Plaintiff's argument reads *out* the temporal component and surrounding context in Idaho Code § 48-303(3)(a)(i) and improperly pairs it with the phrase "directly or indirectly" from a separate statute. Plaintiff's second argument therefore fails. Plaintiff never alleges facts showing that Praxis authorized Bonneville Collections to collect Plaintiff's debt, and Plaintiff's attempt to attribute Interpath's conduct to Praxis "through a chain" cannot substitute for the conduct that the statute actually defines as an extraordinary collection action. (*See* Dkt. 48 at 10.)

Third and finally, Plaintiff argues that the pleaded facts make it reasonable to infer that Praxis authorized the collection of Plaintiff's debt. (*See id.* at 11-13.) To be clear, the factual allegations in the First Amended Complaint only allege that "Interpath regularly works with and provides laboratory testing for Praxis[.]" (Dkt. 43 ¶ 3.) It is not until Plaintiff begins pleading his causes of action that he makes the conclusory allegation that "Praxis authorized Interpath . . . to ***bill and to pursue collection on***" patients' debts. (*Id.* ¶ 72 (emphasis added).) Referring patients to Interpath for laboratory services cannot support the inference that Praxis authorized the specific conduct challenged in Counts 2, 4, and 6. Thus, Counts 2, 4, and 6 must be dismissed.

In any event, these counts are destined for dismissal because they all rely on the false premise that it was Praxis who performed the blood draw services on Plaintiff (and thus Praxis "authorized" Interpath to bill for its services). The blood draws were, in fact, performed by an Interpath employee. That is why they appeared on Interpath's bill. While that factual dispute is beyond the scope of this motion, it underscores the tenuous basis upon which these claims rest.

## III. CONCLUSION

For the reasons above, Defendants respectfully request that the Court grant their motion and dismiss Counts 2, 4, 6, 8, 9, and 10 in the First Amended Complaint.

DATED: October 9, 2026

STOEL RIVES LLP

*/s/ Wendy J. Olson*
Wendy J. Olson
Cory M. Carone
Tom R. Johnson, Jr.
Stephen H. Galloway

*Attorneys for Defendants*