Jaren Wieland, ISB No. 8265
MOONEY WIELAND WARREN
512 W. Idaho St., Ste 103
Boise, ID 83702
t: 208.401.9219
f: 888.234.8543
jaren.wieland.service@mooneywieland.com

Aaron M. Zigler (*Pro Hac Vice*)
Nidya S. Gutierrez (*Pro Hac Vice*)
Lawrence V. Ashe (*Pro Hac Vice*)
ZIGLER LAW GROUP, LLC
308 South Jefferson Street, Suite 333
Chicago, Illinois 60661
t: 312.535.5995
aaron@ziglerlawgroup.com
nidya@ziglerlawgroup.com
larry@ziglerlawgroup.com

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

**Nolan Anderson**, on behalf of himself individually, and on behalf of all others similarly situated,

Plaintiff,

vs.

**Interpath Laboratory, Inc.**, an Oregon corporation and **Praxis Health, P.C.** an Oregon Professional Corporation,

Defendants.

Case No. 2:24-cv-00341-AKB

**Plaintiff's Motion to Compel Compliance with Subpoena to Nonparty Bonneville Billing and Collections and Supporting Memorandum of Law**

Plaintiff Nolan Anderson moves under Federal Rule of Civil Procedure 45(d)(2)(B)(i) for an order compelling nonparty Bonneville Billing and Collections, Inc. ("Bonneville") to comply with the subpoena served on it April 17, 2026. The motion is supported by the Declaration of Lawrence V. Ashe and its exhibits.

**INTRODUCTION**

Bonneville holds the records of what happened to Interpath's patients after Interpath sent them to collection. Interpath has sworn it does not have those records. Bonneville refuses to produce them. The result is that every post-referral fact in this case—who was sent to collection, when, what each patient was charged, and who was reported to a credit bureau—sits with the one entity that insists none of it is Plaintiff's business.

Bonneville's objections rest on one premise: it is not a defendant, so its conduct is irrelevant. Ex. 2. The Idaho Patient Act forecloses that premise. The Act reaches a provider's "agent or third-party representative," classifies assignment to a collector and credit reporting as extraordinary collection actions, and makes "any party" that takes such an action out of compliance liable. Idaho Code §§ 48-303(3)(a), (6)(a), 48-311. Bonneville took those actions against Plaintiff. Its records will show whether they were lawful.

Bonneville has never backed its burden objection with a single fact. More than six months after service, after an extension, a meet-and-confer, and the Court's informal-conference process, Bonneville has produced no documents, no declaration, no cost estimate, and no privilege log. Its one substantive disclosure cuts against it: Interpath's placements arrive by portal upload into a collections database that runs automated validation checks and that generated, on request, a five-year count of 152,566 assigned

accounts. Ex. 3 at 4. A database that can count placements can count interest charges and credit reports. The Court should order Bonneville to comply with the subpoena.

## BACKGROUND

### A. Bonneville Collects Interpath's Accounts and Keeps the Interest

Interpath admits that during the relevant period it never sent any patient a consolidated summary of services, that its final notice omitted two statutorily required items, and that it referred 363,495 accounts to a third-party collector between January 1, 2020 and March 9, 2026—automatically, unless an account was flagged, and a flag delayed referral by only sixty days. FAC ¶¶ 40–42. Interpath assigns accounts to Bonneville under an agreement that lets Bonneville sue in its own name and "keep all interest accrued." (DEFS_00006715).

Plaintiff's $53.40 laboratory bill was one of those accounts. Bonneville sent him a collection letter on December 19, 2023. FAC ¶ 32 & Ex. E. On January 2, 2024, Plaintiff disputed the debt in writing. Ex. 7 (DEFS_00000041). Bonneville then sent him a validation letter dated January 11, 2024 Ex. 8 (DEFS_00000164); discussed the account with Interpath in late February, Ex. 9 (DEFS_00000084); and exchanged a March 1, 2024 email cancelling the account, Ex. 8 (DEFS_00000162–171).

### B. Interpath Has Sworn it Has No Records of What Happened After Referral

Asked for documents concerning its decision to refer Plaintiff's account to Bonneville, Interpath located none. Ex. 5 at 3-4 (Resp. to RFP No. 3). After what it described as a reasonable and diligent search, Interpath located nothing concerning credit reporting on Plaintiff's account, interest and fees charged after referral, or its agreements

and reporting terms with credit agencies. Ex. 6 at 3-5 (Resps. to RFP Nos. 23–24, 53–54).

### C. Bonneville Has Answered the Subpoena With Unsupported Objections and Nothing Else

Plaintiff served the subpoena on Bonneville's registered agent on April 17, 2026. Dkt. 36. It covers January 1, 2020 to the present and contains thirteen requests that double as Rule 30(b)(6) topics: Plaintiff's account file and communications (Requests 1–3); the Interpath and Praxis contracts (4); collection instructions, policies, and Idaho Patient Act compliance communications (5–8); communications about this lawsuit (9); and monthly counts of collection actions, credit-reporting activity, and interest charges, plus complaints under the Act (10–13). Ex. 1. Instruction 4 requires a privilege log. *Id.*

Objections were due May 1. Fed. R. Civ. P. 45(d)(2)(B). That day, Bonneville's counsel asked for more time, and Plaintiff agreed to a one-week extension. Ashe Decl. ¶ 4. Bonneville missed the extended date serving them on May 19. *Id.* ¶ 5; Ex. 2. The four-page response objects that Bonneville "is not a Defendant," folds that objection and generic burden objections into every later response, invokes the attorney-client privilege as to Request 9 without a log, and represents that the December 19, 2023 letter "was the only action taken by BBC" on Plaintiff's account. Ex. 2 at 1–3. The record set out above shows otherwise. Exs. 7–9.

Counsel spoke on May 21 and reached an impasse. Ashe Decl. ¶ 8. Chambers then convened an informal discovery conference, where Bonneville was asked to document its claimed burden. *Id.* ¶¶ 9–10. Plaintiff followed up six more times between June and September. *Id.* ¶ 11. Bonneville's only substantive response came on August 7: Interpath uploads a standard collections extract to Bonneville's secure portal; Bonneville imports it

into its collections database, which runs validation checks and automatically generates an exception report; and 152,566 accounts were assigned over five years. Ex. 3 at 4. On August 27, counsel added that communications "can only be determined on an account by account basis" and that Bonneville has "no intent on providing any policy or procedure as a non-party." Ex. 4. On September 8, chambers advised that the informal process had run its course. Ashe Decl. ¶ 14.

## ARGUMENT

A Rule 45 subpoena reaches nonprivileged matter relevant to a claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *Jacobsen Outdoor Grp., LLC v. Rocky Mountain Hunting Calls & Supplies, LLC*, 2024 WL 249365, at *2 (D. Idaho Jan. 23, 2024). Once the requesting party shows relevance, the nonparty resisting the subpoena bears the burden of proving undue burden. *Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Grp., Inc.*, 2013 WL 6446704, at *2 (D. Idaho Dec. 9, 2013). Plaintiff has made the first showing, and Bonneville has not attempted the second.

### I. Bonneville's Records Go to the Heart of Plaintiff's Claims

#### A. The Act Regulates the Collection Conduct Bonneville Performed

Bonneville's nonparty status does not shrink the scope of discovery; relevance turns on what records show, not on who holds them. Moreover, Bonneville could be a defendant if it wants to be. The Idaho Patient Act defines "health care provider" to include "any agent or third-party representative thereof." Idaho Code § 48-303(6)(a). It classifies transferring a patient's debt to a third party and reporting adverse information to a consumer reporting agency as extraordinary collection actions. *Id.* § 48-303(3)(a)(i)–(ii). It bars interest and

fees until sixty days after the patient receives the required notices, *id.* § 48-304(1)(d); puts the burden of proving compliance on "[a]ny person seeking to engage in an extraordinary collection action," *id.* § 48-307; and makes "any party" that takes a noncompliant action liable, *id.* § 48-311. Whether Bonneville acted as Interpath's agent or as its assignee, it took the actions the Act regulates. Its records show when each account arrived, what letters followed, what interest accrued, and what was reported. These are the records that will show compliance or non-compliance with IPACT.

Plaintiff's requests track those elements. Requests 1–3 seek Plaintiff's file. Request 4 seeks the agreement that defines the relationship, including Bonneville's right to keep accrued interest. Requests 5–8 seek to show what Bonneville was told to do with Interpath's accounts and how the two companies handled compliance. Bonneville's own objections prove the need: it represented that a single letter was its only action on Plaintiff's account, when the record shows a written dispute, a validation letter, a call with Interpath, and a cancellation. Exs. 2, 7–9. Plaintiff is entitled to Bonneville's records, not its recollection.

Bonneville's offer to supply an affidavit stating when Plaintiff's account was assigned does not discharge its obligations. The affidavit would supply one date for one account; it says nothing about interest, credit reporting, instructions, or any other patient.

### B. Bonneville's Placement Records Identify the Class

The proposed class consists of patients whose accounts Interpath, "or any agent acting on its behalf, sold, transferred, assigned, or referred" to a third-party collection agency. FAC ¶ 44. Interpath's admissions establish its uniform practices, but they do not show which accounts reached Bonneville, when, or what happened next. Requests 10–13

seek exactly that for accounts placed with Bonneville: monthly placement counts, interest charges, credit-reporting activity, and complaints under the Act. Those records bear on whether the challenged practices were uniform, and on the number of violations, each carrying statutory damages under § 48-311.

### C. Interpath Cannot Supply What Bonneville Withholds

Bonneville's fallback is that Plaintiff should get these records from Interpath. Ex. 2 at 2–4. Courts do protect nonparties from producing what a party can readily supply. *Rocky Mountain*, 2013 WL 6446704, at *4. But Interpath has sworn that it has no records of the referral decision, credit reporting, or post-referral interest and fees, and it refuses to produce collection amounts or the identities of patients subjected to extraordinary collection actions. Exs. 5–6. Interpath's data reaches Bonneville by portal upload, with no direct connection between the two systems. Ex. 3 at 4. What Bonneville received, the letters it generated, the interest it charged, and the credit reporting it performed exist in Bonneville's database and nowhere else. A subpoena cannot be duplicative of records the party does not have.

## II. Bonneville Has Offered No Evidence of Undue Burden

Bonneville has made no showing of burden, and the special weight courts give nonparty burden cannot substitute for one. *See Rocky Mountain*, 2013 WL 6446704, at *2-3. Its objections contain no declaration, no description of any search, no estimate of time or cost, and no count of responsive documents for any request. Ex. 2. Asked during the informal-conference process to document its burden, Bonneville did not. Ashe Decl. ¶¶ 10,15. Its statements that communications can be identified only account by account and

that it has "no intent" to produce policies, Ex. 4, are positions, not evidence. A nonparty that has had six months to quantify its burden and has chosen not to should not receive the benefit of the doubt.

Bonneville's own description of its system defeats the objection. Placements arrive through an automated pipeline into a collections database that validates them and generates exception reports—and that produced a five-year count of 152,566 accounts for a single email. Ex. 3 at 4. The structured-data requests (10, 12, and 13) seek counts and documents sufficient to show figures; a database that can count placements can ordinarily count interest charges and credit reports. The document requests are narrow where it matters most: Requests 1–4 reach one account file and one set of contracts. If some communications require account-level review, that is a reason to sequence production, not to excuse it, and the proposed order does exactly that.

## III. Bonneville's One-Line Privilege Assertion Cannot Justify Withholding Anything

Bonneville says only that Request 9 "requires BBC to violate attorney/client privilege." Ex. 2 at 3. A nonparty withholding subpoenaed material as privileged must "expressly make the claim" and describe what it withholds so the parties can assess the claim. Fed. R. Civ. P. 45(e)(2)(A). The subpoena required a log. Ex. 1, Instr. 4. Bonneville has served none, and a blanket assertion preserves nothing. *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct. for Dist. of Mont.*, 408 F.3d 1142, 1149 (9th Cir. 2005) (holding that "boilerplate objections or blanket refusals" in a discovery response "are insufficient to assert a privilege").

To narrow the dispute, Plaintiff will exclude Bonneville's communications with

outside counsel specifically retained to advise Bonneville concerning the subpoena and this discovery dispute from Request 9 and from any privilege log. This exclusion does not extend to otherwise responsive communications with Interpath, Praxis, or other third parties merely because Bonneville's counsel was copied on the communication or because the communication concerns this lawsuit or the accounts at issue. Such communications are not privileged merely because litigation is their subject. If Bonneville claims that a particular document is protected by attorney-client privilege or the work-product doctrine, it must identify and substantiate that claim in a privilege log.

## IV. The Court Should Order Staged Compliance

Plaintiff asks the Court to order compliance in stages, as set out in the proposed order:

1. **Within 21 days:** Plaintiff's account file and communications (Requests 1–3, limited to Plaintiff's account); the Interpath and Praxis contracts (Request 4); and a report from the collections database responsive to Requests 10, 12, and 13, in native or delimited-text format.
2. **Within 14 days:** a privilege log for anything withheld, and any declaration supporting a claim of significant.
3. **Within 30 days:** policies, instructions, and compliance communications (Requests 5–8), complaints (Request 11), and Request 9 as narrowed above, drawn from the files of the personnel responsible for the Interpath and Praxis relationship using agreed search terms.
4. **After production:** a Rule 30(b)(6) deposition on the noticed topics, by

remote videoconference or in Idaho Falls, at Bonneville's election.

## CONCLUSION

Bonneville holds the records of what happened to Plaintiff's account and to every account Interpath placed with it. Interpath has sworn it does not have them, and Bonneville has offered no evidence that producing them would be unduly burdensome. The Court should grant the motion and enter the proposed order.

## LOCAL RULE 37.1 CERTIFICATION

Plaintiff's counsel certifies that they spoke directly with Bonneville's counsel on May 21, 2026, and participated in the Court's informal discovery-dispute process, in a good-faith effort to resolve this dispute without court action. Ashe Decl. ¶¶ 8–11.

Dated November 11, 2026

*s/ Lawrence V. Ashe*

Aaron M. Zigler (*Pro Hac Vice*)
Nidya S. Gutierrez (*Pro Hac Vice*)
Lawrence V. Ashe (*Pro Hac Vice*)
ZIGLER LAW GROUP, LLC
308 South Jefferson Street, Suite 333
Chicago, Illinois 60661
t: 312.535.5995
aaron@ziglerlawgroup.com
nidya@ziglerlawgroup.com
larry@ziglerlawgroup.com

Jaren Wieland, ISB No. 8265
MOONEY WIELAND WARREN
512 W. Idaho St., Suite 103
Boise, ID 83702
t: 208.401.9219
f: 888.234.8543
jaren.wieland.service@mooneywieland.com

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Motion to Compel, together with all supporting papers, to be served on Bonneville Billing and Collections, Inc., the nonparty subpoena recipient, by depositing the same in the United States mail, postage prepaid, addressed as follows:

Bonneville Billing and Collections, Inc.
1465 N. Skyline Dr.
Idaho Falls, ID 83403

I further certify that a copy of the foregoing was served by electronic mail on counsel for Bonneville Billing and Collections, Inc., at the following address:

Robinson & Henry, P.C.
Joe Lico
joe.lico@robinsonandhenry.com

I served the foregoing document electronically on the following parties and counsel of record through the Court's CM/ECF system:

Stoel Rives LLP
Wendy J. Olson
Wendy.olson@stoel.com
Thomas R. Johnson
Tom.johnson@stoel.com
Stephen Galloway
Stephen.galloway@stoel.com
Cory Michael Carone
Cory.carone@stoel.com

*s/ Lawrence V. Ashe*
Attorney for Plaintiff